FILED
2020 Jul-01  PM 12:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

|  |  |
|---|---|
| ROY S. MOORE, | |
| Plaintiff, | Civil Action |
| v. | Case No. 4:20-cv-00124-HNJ |
| TIANA LOWE *et al.*, | ORAL ARGUMENT REQUESTED |
| Defendants. | OPPOSED |

## DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...........................................................................................1

BACKGROUND ...........................................................................................3

ARGUMENT ................................................................................................6

   I.   Moore Does Not State A Claim For Defamation Against Any
       Defendant ..........................................................................................7

       A.   Moore fails to plausibly allege any defamatory statement ..................8

           1. Moore has not alleged a false statement of fact regarding the
              publicly reported sexual-misconduct accusations...........................9

           2. The remaining statements challenged by Moore are protected
              opinion or hyperbole ...................................................................15

       B.   Moore fails to plausibly allege constitutional malice ........................19

   II.   Moore Does Not State A Claim For Outrage Against Any Defendant.......25

   III.   The Court Should Independently Dismiss The Claims Against Clarity
       Media Group, Inc., Philip Anschutz, and Philip Klein ..............................26

CONCLUSION ............................................................................................30

i

## INTRODUCTION

"To preserve First Amendment freedoms and give reporters . . . the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.).  Bluntly stated, this action is just such a weed.

Plaintiff Roy Moore is a classic "public figure" — a repeat candidate for one of Alabama's U.S. Senate seats.  His Complaint vents his considerable unhappiness about what the press — not just defendants, but virtually every leading publication in America — wrote about him.  But the First Amendment's "constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971).  All of the challenged statements at issue here come within the ambit of that "fullest" constitutional protection.

Moore alleges that defendants libeled him in 2019 in four opinion pieces and two news stories published in the *Washington Examiner* online newspaper, by reporting (accurately) that accusations of sexual misconduct had been made against him, and by expressing opinions about the veracity of the accusers and the nature of his alleged conduct.  But Moore's Complaint fails to state a claim for either defamation or "outrage" (which Moore mischaracterizes as "Intentional Infliction

1

of Emotional Distress," and which depends on the validity of the defamation claim and has additional elements he cannot plausibly assert, *see* Point II, *infra*).

*First*, Moore fails to identify a single false statement of fact made by any defendant in any article. Substantially all of the statements at issue in the *Examiner* articles are references to allegations numerous women made against Moore. According to his own admissions and the public record, which the Court is free to consider on this motion, the *Examiner* accurately recounted that Moore had been accused of sexual misconduct with young (in some instances *very* young) women. Those statements are all true. The remainder of the challenged statements consist of opinions — identified as such — and rhetorical hyperbole that cannot be defamatory as a matter of law. (Point I-A, *infra*).

*Second*, Moore pleads not a single fact plausibly supporting his conclusory allegation that defendants acted with constitutional "actual malice," which he conflates with common law malice or "ill will." For more than 50 years, public figures like Moore have been held to a particularly demanding standard. They must allege — and after *Twombly* must set forth concrete facts showing — that defendants made false statements with *knowledge* that the statements were false or with *reckless disregard for their truth*. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Leaving aside Moore's conclusory rhetoric, the Complaint asserts no fact giving rise to a plausible inference that any defendant published any

2

article — opinion or news — that the defendant subjectively believed to be false or entertained serious doubts as to its truth.  (Point I-B, *infra).*

*Third*, Moore's claims independently fail as to defendants Clarity Media Group, Philip Anschutz, and Philip Klein, because none had any involvement with the challenged statements.  Not only does Moore fail to state a claim against those defendants, but the Court lacks personal jurisdiction over them.  (Point III, *infra*).

Ultimately, Moore's Complaint is an attack on the *Examiner*'s alleged (and legally irrelevant) "animus" toward him, reflected in its publication of pieces suggesting that he was unfit for office and would lose a safe Republican Senate seat.  Am. Compl., Dkt. 5 ("AC") ¶¶ 18, 20, 72, 74.  But critical political speech is not constitutional malice, and Moore's attack is nothing less than a frontal assault on the First Amendment's core protection of "debate on public issues" that "should be uninhibited, robust, and wide-open."  *Sullivan*, 376 U.S. at 270.

## BACKGROUND

On November 9, 2017, during the course of Moore's Senate campaign, the *Washington Post* reported multiple accusations of sexual misconduct against him. AC ¶ 16.  These included Leigh Corfman's claim that, when she was 14, then-Assistant District Attorney Moore (age 32) drove her to his house, "touched her over her bra and underpants," and "guided her hand to touch him over his

3

underwear" against her will.[1]  Three other women — identified by name, in on-the-record interviews — also alleged that "Moore pursued them when they were between the ages of 16 and 18 and he was in his early 30's."  DX-6 at 1.

The *Post* story spurred intense national scrutiny of Moore's history with young women.  *See* DX-6 to DX-38, DX-45 (compiling press coverage).[2]  Other accusations soon surfaced.  Four days after the *Post* story, the *Wall Street Journal* (among other outlets) reported that a "[f]ifth woman," Beverly Nelson, had accused Moore at a press conference of "tr[ying] to initiate sex with her in his car" when she was 16.  DX-19 at 1.  She said he forced her head down to his crotch and stated, "I thought that he was going to rape me.  I was twisting and I was struggling and I was begging him to stop."  *New accusations against Roy Moore*, CBSNEWS.COM (Nov. 13, 2017), https://cbsn.ws/2zUaKvP; *see also* DX-18 at 3.

Two days after Nelson's press conference, the *New York Times* reported that

---

[1] Stephanie McCrummen et al. *Woman says Roy Moore initiated sexual encounter when she was 14, he was 32*, WASH. POST (Nov. 9, 2017) (DX-6 at 1).  Journalists at the *Washington Post* won the Pulitzer Prize — journalism's highest honor — for uncovering these allegations of sexual misconduct by Moore.  *See* Pulitzer Prizes, *2018 Pulitzer Prize in Investigative Reporting: Staff of the Washington Post*, https://www.pulitzer.org/winners/staff-80.

[2] The Court can take judicial notice of Moore's pleadings, in this case and others, as well as "newspaper articles" whose authenticity are undisputed.  *See United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811-12 & n.4 (11th Cir. 2015); *Tolar v. Cummings*, 2014 WL 3974671, at *2 & n.3 (N.D. Ala. Aug. 11, 2014).  The Court can also notice the full content of the articles the Complaint references, including linked materials, because those items are (1) central to his claims and (2) undisputed.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002) (judicially noticing a full "AP article" in defamation case).  In Exhibits 6 through 45, Defendants have compiled and highlighted the relevant materials for the Court's convenience.

"four more women came forward" (for a total of nine at this point) to complain of being "groped, forcibly kissed or subjected to unwanted advances" by Moore. DX-21 at 1.  A chronology of the nine accusations is set forth in Exhibit 2.  One accuser recalled being "told that Mr. Moore had been banned from the [Gadsden] mall" after "he would not leave her alone."  DX-21 at 1.  Other journalists surfaced similar accusations about the Gadsden mall.  On November 13, 2017, for example, the *New Yorker* reported that "more than a dozen people" recalled that Moore was "banned from the mall because he repeatedly badgered teen-age girls."  DX-15 at 3.  An *AL.com* story that same day likewise reported that Moore's predatory behavior at the mall was "common knowledge" in Gadsden.  DX-14 at 1.

Moore denied the accusations of these nine women, claiming that they were fabricated by his political opponents.  AC ¶¶ 14-15.  But the controversy became a matter of national debate, as even fellow Republicans gave public statements distancing themselves from Moore and urging him to drop out of the race.  *See*, *e.g.*, DX-22 at 4 (Ivanka Trump:  "There's a special place in hell for people who prey on children.  I've yet to see a valid explanation and I have no reason to doubt the victims' accounts."); DX-16 at 4 (Senate Majority Leader Mitch McConnell: "I think he should step aside."); *id*. at 2 (Senator Mitt Romney:  "Moore is unfit for office and should step aside.").  Moore refused to do so, stayed in the race, and eventually lost what was considered a "safe" Republican seat to Doug Jones.  *See*

AC ¶ 16.  Moore later blamed his loss on the "accusations of sexual impropriety" made by the nine women and the media's reporting of those allegations.  Compl. ¶¶ 13, 50, *Moore v. Hagedorn*, No. 31-CV-2018-900346.00 (Ala. Cir. Ct. Apr. 30, 2018) (Doc. 2) ("*Hagedorn* Compl.") (DX-41 at 3).

## ARGUMENT

Moore alleges that the *Washington Examiner*, which Moore describes as a leading "conservative website[ ]," and five writers and editors at the *Examiner*, defamed him in four opinion pieces and two news stories published online in 2019, in the context of Moore's renewed campaign for the Senate.  AC ¶¶ 4-9, 14-42.[3]

He argues, in substance, that it was defamatory to publish the allegations made by Corfman, Nelson, and others, because the underlying accusations — which he admits were made — "were strongly denied."  AC ¶ 16; *e.g.*, AC ¶¶ 19, 62.  And he claims that the *Examiner*'s characterization of certain allegations was inaccurate, overstated, or hyperbolic.  *E.g.*, AC ¶ 60 (defendant Lowe's exhortation to voters that "if you back Roy Moore in a primary, every pro-life bill that fails in the Senate means you have extra blood of babies on your hands").[4]

---

[3] The remaining defendants — Clarity Media Group and Philip Anschutz — are not alleged to have played any role in writing, editing, or reviewing any *Examiner* articles, including the ones at issue in this case.  AC ¶¶ 11-12, 41.  They should be dismissed for this reason alone.

[4] Moore claims that defendants made defamatory statements in six *Examiner* articles published in 2019.  AC ¶¶ 43-72.  DX-1 has each of the challenged publications, as they appeared online near the time of publication, with the alleged defamatory statements highlighted for the Court's convenience.  Statements accurately reporting on allegations are highlighted in yellow, and the statements that are rhetorical hyperbole and opinion are highlighted in green.

Moore alleges that the *Examiner* published these pieces "with intent to disrupt and preclude . . . Moore's successful candidacy for the [U.S.] Senate." AC ¶ 74.  The Complaint equates that political motive with "actual malice," *id.*, and asserts that defendants acted with "reckless disregard of the truth," *e.g.*, AC ¶ 48, primarily because of an alleged "fail[ure] to investigate" the allegations, AC ¶ 51, and a refusal to retract in response to a one-page letter his counsel sent the *Examiner* in June 2019, AC ¶ 49.  *See* Plaintiff's Exhibit ("PX") D.

## I.    Moore Does Not State A Claim For Defamation Against Any Defendant

Moore must plead facts "stati[ng] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[C]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Moore's Complaint fails that test and should be dismissed.

To make out a defamation claim, Moore must plead facts establishing that defendants made one or more false statements of fact.[5]  As a candidate for U.S. Senate, Moore is a public figure.  *See Monitor Patriot*, 401 U.S. at 271.  The First Amendment thus requires him to show "actual malice" — that is, knowledge that

---

[5] Under Alabama law, Moore bears the burden to establish: (1) a false and defamatory statement about him; (2) an unprivileged communication of that statement to a third party; (3) fault amounting to at least negligence on the part of the defendant; and (4) cognizable injury. *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003) (citation omitted).

the statement was false or reckless disregard for its truth.  *Sullivan*, 376 U.S. at

279-80.  That rule "protects the paramount public interest in a free flow of

information to the people concerning public officials."  *Monitor Patriot*, 401 U.S.

at 273-74.  Because "[t]he clash of reputations is the staple of election campaigns,"

the rule "appl[lies] with special force to the case of the candidate."  *Id.* at 274-75;

*see Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300 (1971) ("a candidate for

elective office presents what is probably the strongest possible case" for requiring

actual malice).  Moore fails to plead either element.

### A.     Moore fails to plausibly allege any defamatory statement

"True statements, statements that are not readily capable of being proven

false, and statements of pure opinion are protected from defamation actions by the

First Amendment."  *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018).

Statements that are "substantially correct" are not actionable.  *Drill Parts & Serv.*

*Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1290 (Ala. 1993).  "Minor inaccuracies do

not amount to falsity so long as the substance, the gist, the sting, of the libelous

charge be justified."  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517

(1991) (citation omitted).  And "hyperbolic expressions reflecting . . . opinion . . .

are not actionable."  *Horsley*, 304 F.3d at 1136.

The statements Moore challenges all consist of references to allegations

against him that he admits were made, or protected opinions regarding those

allegations.  He does not plausibly allege that any of these references is false (Point I-A-1), and he cannot as a matter of law maintain his claim based on opinions or rhetorical hyperbole concerning the allegations (Point I-A-2).

### 1.    Moore has not alleged a false statement of fact regarding the publicly reported sexual-misconduct accusations.

The Complaint alleges that defendants defamed Moore by publishing accounts of Moore's accusers because he claimed that those accounts were false and had denied them.  *E.g.*, AC ¶¶ 16, 19, 62.  He also, in a limited number of circumstances, alleges that defendants' characterization of the allegations is not precisely accurate.  Neither theory is legally viable.

*Truthful reporting of allegations against a candidate for public office is not defamatory*.  Moore's principal contention is wrong as a matter of law.  Providing "accurate and truthful reports of what ha[s] been said" about public issues, including accusations against elected officials, lies at the heart of journalism's "wholly legitimate function."  *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 12-13 (1970).  For that reason, when "media defendants" describe allegations against public figures like Moore, "the defendant need not show the allegations are true, but must only demonstrate that the allegations were made and accurately reported."  *Green v. CBS Inc.*, 286 F.3d 281, 284 (5th Cir. 2002).

*Clark v. Viacom Int'l Inc.*, 617 F. App'x 495 (6th Cir. 2015) well illustrates that principle.  There, the court affirmed dismissal of defamation claims brought by

two former *American Idol* contestants concerning published reports that FOX had

disqualified them for failing to disclose their criminal histories.  *Id*. at 510.  The

court held that the reports were substantially true because they "relate what FOX

did, not what plaintiffs did."  *Id*.  Because the publisher accurately described what

FOX had *accused* the contestants of doing, the court held there was no false

statement.  *See id*.  Other courts of appeals have reached similar conclusions.[6]

When a journalist merely "report[s] [on] [an] alleged rape," the report is true so

long as the described victim "did make an allegation of rape" — even if the

plaintiff denies the accusation.  *Janklow*, 759 F.2d at 647-48.

      This principle applies to virtually all of the statements that Moore

challenges.  *See* DX-1 (highlighting in yellow each of the statements in the articles

that accurately reports on allegations made against Moore, and that Moore

challenges as false because he disputes the allegations).

      *Moore's quibbles about defendants' characterizations of certain allegations

are wrong and fail to support his claims*.  The remainder of Moore's claims

regarding defendants' factual statements are refuted by Moore's own admissions

---

[6] *See Blesedell v. Chilicothe Tel. Co.*, 811 F.3d 211, 225 (6th Cir. 2016) (no falsity where defendant "truthfully reported that an individual made an allegation"); *Global Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 986-87 (7th Cir. 2004) ("all of the reports were either true or substantially true recitations of the government's suspicions"); *Gravitt v. Brown*, 74 F. App'x 700, 705 (9th Cir. 2003) ("Brown's statement that Gravitt was a 'prime suspect' was not the same as saying that she actually committed the theft, so it was not a false statement of fact."); *Janklow v. Newsweek, Inc.*, 759 F.2d 644, 647 (8th Cir. 1985) ("report of [an] alleged rape was basically true" because a "girl did make an allegation of rape against [plaintiff]").

and the undisputed public record.  As confirmed by the chronology in Exhibit 2, the *Examiner*'s descriptions of the nine accusations against Moore were accurate.

Moore alleges that defendants committed libel by falsely writing that Ms. Nelson had "accused Moore of attempting to rape her in a car."  DX-1 at 5 (citing PX-C at 1).  He asserts (¶ 22) that those statements are false because Nelson "never accused [him] of 'attempting to rape her.'"  He is wrong.  At a televised press conference, Nelson described in detail Moore's effort to force her head into his crotch, and stated, "I thought that he was going to rape me."  DX-18 at 3. Under Alabama law, forced oral sodomy does indeed constitute "rape."  *See* Ala. Code 1975 § 13A-4-2 (attempt); § 13A-6-61 (first degree rape); § 13A-6-60 (sodomy); § 13A-6-70 (lack of consent is "[f]orcible compulsion").  This accurate summary of Nelson's accusation is not libelous.  *See Janklow*, 759 F.2d at 647.

Moore next claims that defendants libeled him by overstating the number of his accusers.  AC ¶¶ 36, 64-65, 68; DX-1 at 16-18.  He alleges that defendant Polumbo (PX-H at 2) stated falsely that "'multiple' teenagers . . . accuse[d] [him] of sexual misconduct."  AC ¶ 36.  But just three paragraphs earlier, he admits that Corfman and Nelson "accused [him] of sexual assault" when "both [were] alleged to be *in their teens*."  AC ¶ 33 (emphasis added).  Hence his own Complaint establishes that there were "multiple" accusers — *i.e.*, "more than one."  Merriam-Webster's Collegiate Dictionary 764 (10th ed. 1998) ("Webster's"); *see Clark*, 617

F. App'x at 507 (no falsity when "complaint" is "self-contradictory").

Moore also contends that defendant Dunleavy (PX-E, F) falsely reported that "more than two women had accused [him] of sexual assault." AC ¶ 64; DX-1 at 8, 12. But Moore admits that at least three women made such an accusation. As noted above, he concedes (¶ 33) that Corfman and Nelson accused him of "sexual assault." As for a third accuser — Tina Johnson — Moore himself has admitted in pleadings filed in another case that she "accused [him] of grabbing 'her buttocks' as she was leaving his law office." *Hagedorn* Compl. ¶ 17 (DX-41 at 3). Such forceful groping is textbook "sexual assault." Office of Women's Health: U.S. Dep't of Health and Human Services, *Sexual Assault*, https://bit.ly/3hSFVsw (last visited June 22, 2020) ("Sexual assault is any type of sexual activity or contact . . . that happens without your consent.").[7]

Moore further challenges (¶¶ 23, 57) defendant Lowe's reference to a "handful of other women" — beyond Corfman and Nelson — that "alleged having intimate relationships with Moore in their teens." PX-C at 1; *see* Webster's at 613 ("intimate": "of a very personal or private nature"). But once again, that statement is an accurate summary of what these women publicly alleged. Several women in

---

[7] Johnson's lawyer told the *New York Times* in 2018 that Johnson "reaffirms" her allegation "about the *sexual assault* she suffered from the hands of Mr. Moore." DX-33 at 1 (emphasis added). Moore also cites (¶ 68) a polygraph denying the allegations by Johnson (and Corfman and Nelson), and the results purport to show his "truthfulness in a matter of SEXUAL ASSAULT." DX-44 at 1.

12

addition to Corfman and Nelson said they "dated" Moore as teenagers.  DX-6 at 6-7.  Debbie Gibson (age 17) was "kissed" "in [Moore's] bedroom" and "by the pool at a local country club" (*id.* at 7); Gloria Deason (age 18) was taken to Moore's house "at least two times" and "kiss[ed] and hugg[ed]" (*id.* at 6); Gena Richardson (age 18) was "'forceful[ly]' kiss[ed]" in a secluded parking lot (DX-23 at 1).

Moore disputes the statements that he was an "accused sexual assailant" or an "alleged sexual predator."  *Compare* AC ¶¶ 21, 34, 65, *with* DX-1 at 3, 10.  But his own Complaint and the undisputed public record establish that he *was* accused of both assault and preying on young women.  *See supra* pp. 11-12.[8]

Moore next accuses Lowe (¶ 21) of stating falsely that "multiple people allege that Moore was banned from the Gadsden Mall."  DX-1 at 5 (citing PX-C at 1).  *See* Webster's at 764 (multiple:  "more than one").  But his own pleadings establish that *many* people had made this allegation.  *See Cecil* Compl. ¶ 14 (DX-43 at 4-5) (quoting a TV ad alleging that he was "banned from the Gadsden

---

[8] Not only does Moore admit that three women accused him of assault, *see supra* p. 11-12, but five more publicly alleged he made unwanted sexual advances when they were teenagers, *see* DX-2.  As a Gadsden teacher told the *New York Times*, "I've known for over 20 years that [Moore] was a predator, that he preyed upon girls in the mall. . . .  It's common knowledge." DX-21 at 2.  News articles and election ads — whose authenticity Moore admits — called him a "child predator" and a "predator who stalked young girls."  Compl., *Moore v. Merrill*, No. 03-CV-2017-902015.00 (Ala. Cir. Ct. Dec. 27, 2017) (Doc. 2) ("Election Compl.") (DX-39 at 57); Compl. ¶ 40, *Moore v. Cecil*, No. 19-cv-01855-CLM (N.D. Ala. Nov. 15, 2019) (Doc. 1) ("*Cecil* Compl.") (DX-43 at 15).  Ivanka Trump found "no reason to doubt" Moore's many accusers. DX-22 at 4.  Moore cannot deny he is an "*accused* sexual predator."  PX-F at 1 (emphasis added); *see also* DX-9 at 4; DX-37 at 3; DX-38 at 2.

mall . . . for soliciting sex from young girls"); *id.* at 7, ¶¶ 19-20 (citing an article reporting that "more than a dozen people" said "Moore had been banned from the mall because he repeatedly badgered teen-age girls") (DX-15 at 3).  The ban allegation was also widely reported in the media.  DX-13 at 3; DX-15 at 3.

Finally, Moore takes issue with being characterized by Lowe in her opinion piece as an "accused . . . pedophile" or "pedophilic predator."  DX-1 at 3, 11, 15. He asserts (¶¶ 47, 59), falsely, that "[n]o person [ever] accused" him of being a pedophile.  But the public record is full of examples of just that accusation.  *See*, *e.g.*, Election Compl. (attaching Facebook post that says "Roy Moore is a pedophile and a child predator," with the word "**PEDOPHILE**" in bold red letters emblazoned across his picture) (DX-39 at 80).[9]  And his own Complaint admits that he was accused of forcing himself sexually on a 14-year-old child and a 16-year-old child.  *See* AC ¶ 33.  The undisputed public record has multiple accounts of and references to Roy Moore's alleged attempts to sexually pursue minors.  DX-2; DX-6 at 1; DX-7 at 2; DX-8 at 2; DX-10 at 3; DX-11 at 1; DX-12 at 2; DX-17 at 1; DX-21 at 1; DX-30 at 2; DX-32 at 1; DX-35 at 1; DX-40 at 14; DX-42 at 3, 15.  It therefore cannot have been a false statement to call him an *accused* "pedophile," or "someone who is sexually interested in children."  Cambridge

---

[9] Moore's lawsuit against Sacha Baron Cohen is predicated on that accusation.  *See* Compl. ¶ 21, *Moore v. Cohen*, No. 19-cv-04977 (S.D.N.Y. Sept. 5, 2018); *see also* DX-42 at 3, 15.

Dictionary, https://bit.ly/3dY7YVc.[10]  In any event, Lowe was entitled to give her

opinion on that subject — whether Moore's alleged conduct with nine young

women, two as young as 14, suggested he was sexually attracted to children.  *See*

*infra* pp. 15-19 (opinion cannot support libel claim).

**2.    The remaining statements challenged by Moore are
protected opinion or hyperbole.**

Moore's remaining allegations concern opinions about Moore's accusers and

the nature of his alleged conduct, and colorful language.  The "expression of an

opinion based upon disclosed, nondefamatory facts" cannot give rise to

defamation, "no matter how derogatory the expression."  *Sanders v. Smitherman*,

776 So. 2d 68, 74 (Ala. 2000).  The same principle immunizes "rhetorical

hyperbole or statements that cannot reasonably be interpreted as representing

actual facts."  *Finebaum v. Coulter*, 854 So. 2d 1120, 1125 (Ala. 2003).

Each remaining statement at issue appears in articles that were published

under a header in red with the word "OPINION" — with URLs that labeled them

---

[10] Moore suggests that a "pedophile" can only mean one diagnosed clinically with "pedophilic disorder," defined in a specialized psychiatric text as a "'preoccupation with a prepubescent child or children (*generally* 13 years of age or younger).'"  AC ¶ 59 (quoting Diagnostic and Statistical Manual of Mental Disorders § 302.2 (DSM V 5th ed. 2013) (emphasis added)).  But "falsity in a libel case must be examined from the perspective or understanding of . . . the reasonable reader," not "the technical, legalistic definition."  *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1193-94 (11th Cir. 1999).  In common parlance "pedophile" refers to those who abuse children, not "generally" children only 13 or younger.  Nat'l Ctr. for Missing & Exploited Children, U.S. Dep't of Justice, *Child Molesters: A Behavioral Analysis* 1-2 (1992), https://bit.ly/3cRqMnR ("many people, including the media" and "law enforcement personnel," "routinely refer to those who sexually abuse children as pedophiles").

15

as "opinion" rather than "news."  PX-B, C, G, and H; DX-1 at 3, 5, 14, 17.[11]  The

authors of those pieces, opinion writers Lowe and Polumbo, never claimed to offer

neutral, dispassionate reporting.  Lowe called Moore "a comic book villain" (PX-B

at 1), a "skunk" (*id.*), "a despicable person" (PX-C at 2), and "perhaps the worst

person in American politics" (*id*. at 1).  The title of one of her articles opined that

"Roy Moore is a terrible human being."  *Id*.  And Polumbo's article carried a

similar headline, stating:  "Sorry not sorry.  Roy Moore, the GOP is done with

you."  PX-H at 1.  Such statements conveyed to any reasonable reader that the

authors were offering subjective political commentary, not objective facts.[12]

     The statements Moore challenges in these opinion pieces are both protected

opinion and protected rhetorical hyperbole.  Lowe's statement (PX-B at 1) that

"[i]f you back Roy Moore in a primary, every pro-life bill that fails in the Senate

means you have extra blood of babies on your hands" is a textbook example of

"the sort of loose, figurative language that no reasonable person would believe

presented facts."  *Horsley*, 304 F.3d at 1132-33 (citation omitted).  Indeed, the

Eleventh Circuit held a similar phrase — accusing a plaintiff of "hav[ing] the

---

[11] DX-1 has color-coded versions of the articles as they appeared on the *Examiner* website. The Complaint's printer-friendly, black-and-white versions omit this "OPINION" label.

[12] *See*, *e.g.*, *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995) (no defamatory meaning where "readers would expect the [publication] to contain the author's personal and subjective views"); *Arpaio v. Cottle*, 404 F. Supp. 3d 80, 85 (D.D.C. 2019) ("incendiary" words "in the Opinions section" were "too imprecise or subjective" to be actionable); *Herring Networks, Inc. v. Maddow*, 2020 WL 2614857, at *4-7 (S.D. Cal. May 22, 2020) (same for cable TV opinion show).

blood of these doctors on your hands" — to be rhetorical hyperbole "exempt from liability for defamation." *Id*. at 1131-32.

The same is true of Lowe's pithy statement that "the Moore allegations are both a) damning if true, and b) overwhelmingly likely to be true." PX-C at 1. This is a "classic example of statements of opinion relating to matters of public concern." *Sanders*, 776 So. 2d at 74. Lowe gave her subjective view that Moore's accusers are credible and that his alleged conduct is reprehensible if the accusations are true. Indeed, Moore agrees with this opinion, at least as to reprehensibility. *Hagedorn* Comp. ¶ 14 (DX-41 at 3) (describing accused conduct as "immoral acts").

Lowe's statement that Moore was "famous for being banned from a mall because he sexually preyed on underage girls" is more of the same. DX-1 at 3. This is nothing more than colorful language summarizing accusations that Moore himself has acknowledged. *See supra* pp. 5, 13-14. Moore even admits that one TV ad accusing him of those very things ran "close to 1000 times on network TV in Alabama." *Cecil* Compl. ¶ 13 (DX-43 at 4). Calling Moore "famous" for such matters may have been a hyperbolic formulation of her opinion as to his candidacy, but it was fair political commentary given the widespread publicity that these lurid accusations had attracted. No reasonable reader would have understood her use of the word "famous" as a "literal assertion" of facts. *Horsley v. Rivera*, 292 F.3d

17

695, 702 (11th Cir. 2002).[13]  It was, in context, merely a tart summary of Moore's public reputation at a time when he was running for high office.  That is core protected speech, not an actionable false statement of fact.

Finally, Lowe's statement (PX-C at 1) that "Wendy Miller accused Moore of hitting on her while she was under the age of consent in Alabama" is nothing more than Lowe's protected opinion, expressed in "loose language," that the overtures Miller said he made toward her at age 14 were indicative of his being attracted to her, and foreshadowed his outright request that she date him two years later.[14]  The phrase "hit on" is informal and colloquial — most dictionaries consider it slang. *See*, *e.g.*, Cambridge Dictionary, https://bit.ly/2AWDNPw ("hit on someone": "to show someone in a direct way that you are attracted to him or her") (considered "slang").  An expression so "loose" and "figurative" is incapable of defamatory meaning.  *Horsley*, 292 F.3d at 702.  Indeed, its use here is self-evidently a matter of opinion — a "subjective assessment of [Moore's] conduct and . . . not readily

---

[13] *See Morrissey v. WTVR, LLC*, 432 F. Supp. 3d 617, 621, 624 (E.D. Va. 2020) (statement that plaintiff "famously and stupidly published a . . . photo of himself" lacked "the requisite defamatory sting"); *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 507 (S.D.N.Y. 2012) (labeling a person "infamous" for his outspoken anti-Semitic attacks was hyperbole that signaled opinion); *Furst v. Tabloid Commc'ns, Inc.*, 1995 WL 324729, at *3 (Super. Ct. Mass. Feb. 7, 1995) (statement that plaintiff "is a notorious figure" was "rhetorical hyperbole").

[14] Miller alleged that Moore approached her as a stranger at the mall when she was 14 and "told her she looked pretty" before "asking her out on dates" two years later; and at maturity she found it "disgusting" that "a grown man would want to take out a teenager."  DX-6 at 6. Importantly, Lowe linked to the *Post* article recounting Miller's narrative, so readers could make their own decision about whether Moore's actions reflected sexual grooming or were otherwise improper.  *See* Point I-B *infra* (no malice where writer provides facts commented on).

18

capable of being proven true or false." *Turner*, 879 F.3d at 1264.  Lowe was

privileged to give her opinion on this point, particularly in the context of a Senate

race in which Moore's interest in young girls was a topic of legitimate public

concern and debate.  That cannot support an action for defamation.

Because all of the challenged statements in the six published *Examiner*

pieces are not plausibly claimed as false, or are self-evidently protected opinion or

rhetorical hyperbole, Moore has failed to state a claim for defamation.

### B.    Moore fails to plausibly allege constitutional malice

The Court should independently dismiss Moore's Complaint because he fails

to plead constitutional malice.  The Eleventh Circuit has held that "the plausibility

pleading standard [requiring *facts* and disregarding conclusory statements under

*Iqbal*/*Twombly*] applies to the actual malice standard in defamation proceedings"

with particular force in "public figure defamation suits."  *Michel v. NYP Holdings,*

*Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).  Allowing unsuccessful politicians like

Moore to drag journalists into "expensive discovery proceedings" without facts

demonstrating constitutional malice would "constrict th[e] breathing space" that is

"needed to ensure robust reporting on public figures."  *Id*.  Such a chilling effect is

"exactly [what] the actual malice standard was intended to prevent."  *Id.*

The case must be dismissed unless Moore has "allege[d] facts" showing the

defendants knew what they wrote was false or published in reckless disregard of its

19

falsity.  *Id.* at 702-03.  "The test is not an objective one and the beliefs or actions of a reasonable person are irrelevant."  *Id.*  Rather, a plaintiff adequately pleads reckless disregard *only* by alleging facts that raise an inference that the defendant *subjectively* "entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false."  *Id.* at 703.

Moore litters his Complaint with the words "malice" and "reckless disregard."  *E.g.*, AC ¶¶ 20, 38, 44, 48-50.  Such "actual-malice buzzwords" are entitled to no weight.  *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012).  Beyond these "mere[] legal conclusions," *id.*, the Complaint presents four theories of constitutional malice.  Each is meritless.

*Moore's ill-will allegations cannot establish constitutional malice.*  Moore attributes to defendants an "animus and political motivation," AC ¶ 18, that he says manifested in their "intent to disrupt and preclude [his] successful candidacy," AC ¶ 74; *see* AC ¶¶ 20, 25, 39.  But "the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense."  *Harte-Hanks Commc'ns., Inc. v. Connaughton*, 491 U.S. 657, 666 (1989).  Constitutional malice turns on a publisher's belief in a story's accuracy, not on its "motive in publishing."  *Id.* at 665.  Defendants' supposed belief that Moore should lose (or withdraw from the race) provides neither logical nor legal support for a claim that they knew or recklessly disregarded knowing that what they published about him

20

was false.  Their alleged motivation demonstrates only that they engaged in

protected political speech on matters of public concern:  they believed that Moore

was a liability to the Republican Party.  *See Monitor Patriot*, 401 U.S. at 271-73.

      *Moore's claim of no investigation cannot establish constitutional malice.*

Moore alleges (¶ 20) that defendants did not adequately "investigate the facts."

But "a failure to investigate, standing on its own, does not indicate the presence of

actual malice."  *Michel*, 816 F.3d at 703.  That is true even when, as in *Sullivan*, a

publisher fails to "check[ ] [the statement's] accuracy against the news stories in

[its] own files."  376 U.S. at 287.  It is even more true when, as here, the publisher

accurately described (and linked to) on-the-record allegations presented in a

Pulitzer-winning *Washington Post* story.  In any event, the publications did not

assert facts but rather the *accusations*, which were themselves newsworthy.  There

was no duty to "investigate" the allegations, and no inference can be drawn from

an alleged failure to make such an investigation.

      *Moore's claim of failure to include favorable information cannot establish*

*constitutional malice.*  Moore next complains (¶¶ 20, 22, 68) that defendants

declined to include information favorable to him, such as his denials and his

polygraph examination.  But publishers retain "editorial discretion in what to

publish" and are under "no legal obligation to present a balanced view."  *Turner*,

879 F.3d at 1270 (citation omitted); *see Talley v. Time, Inc.*, 923 F.3d 878, 896

(10th Cir. 2019) ("A publisher's decision to omit details favorable to the plaintiff does not, itself, show actual malice.").[15]  Defendants' failure to include information favorable to Moore does nothing to suggest their subjective awareness of falsity. *See*, *e.g.*, *Janklow*, 759 F.2d at 648 ("selective omission[]" of plaintiff's "lie detector test in which he denied the rape" not evidence of malice).

   *Moore's claim of failure to retract cannot establish constitutional malice.* Finally, Moore attempts to find malice in defendants' failure to respond to a one-page retraction letter sent on June 3, 2019, after Lowe's May 29, 2019 opinion piece.  AC ¶¶ 28-29, 32-35.  But the Eleventh Circuit has held it is "clear [that] the failure to retract or correct a falsehood does not prove actual malice."  *Hunt v. Liberty Lobby*, 720 F.2d 631, 643 n.19 (11th Cir. 1983); *see Klayman v. City Pages*, 650 F. App'x 744, 751 (11th Cir. 2016) ("mere refusal to correct a publication falls short").  That principle applies here with particular force, where Moore's letter (PX-D at 1) offered no *facts* that should have caused defendants to entertain any doubts — much less serious ones — about the truth of what had been published.  *See Little v. Consol. Pub. Co.*, 83 So. 3d 517, 524 (Ala. Civ. App. 2011) (malice "cannot be predicated on mere denials, however vehement."); *Biro*

---

   [15] Moore's denials were widely-reported and obvious from the context of the six publications at issue — which is why "allegations" were reported, not facts.  His supposed resort to a lie detector test is of no significance, particularly given the unreliability of such tests.  *See infra* p. 23.

*v. Conde Nast*, 963 F. Supp. 2d 255, 282 (S.D.N.Y. 2013) (retraction letter relevant

only when backed by "evidence . . . that carries a doubt-inducing quality"), *aff'd*

622 F. App'x 67 (2d Cir. 2015).

Aside from his unsubstantiated denials, Moore's letter offered only two

alleged facts that supposedly required retraction of prior stories:  his lawyer

asserted that he passed a polygraph (without providing the actual results or the

questions asked), and that a "former mall manager" had "refuted" the Gadsden

"mall ban."  PX-D at 1.  As for the claimed polygraph, "there is simply no

consensus that polygraph evidence is reliable."  *United States v. Scheffer*, 523 U.S.

303, 309 (1998).  "[R]easonable judges" exclude such evidence at trial all the time.

*United States v. Henderson*, 409 F.3d 1293, 1303 (11th Cir. 2005).  Such dubious

"evidence" does nothing to suggest, much less establish plausibly, that defendants

thereafter published statements they knew to be false or seriously doubted.

As for the mall employee, a single witness's (alleged) recollection does not

raise the "serious doubts" the First Amendment demands.  *Michel*, 816 F.3d at 703.

And even if it could, defendants' statements about the alleged mall ban all

accurately referred to accusations that were in fact made, *see supra* pp. 5, 13-14,

17, and all pre-dated Moore's retraction letter.  *Compare* PX-B at 1, C at 1

(discussing mall ban) *with* PX-E, F, G and H (not doing so).  The letter is thus

irrelevant to their state of mind *at the time* of the alleged mall-ban references,

which is fatal.  *See*, *e.g.*, *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614

(7th Cir. 2013) (alerting defendant to falsity "after publication . . . does not help

[plaintiff] establish actual malice").

Not only does Moore fail to plead facts that raise a plausible inference of

constitutional malice; the alleged facts establish the opposite.  The extraordinary

volume of parallel accounts in a variety of respected publications — as well as the

hyperlinks in defendants' pieces to the underlying reporting — demonstrate that

defendants did not harbor serious doubts about the accuracy of their statements.

 "[S]ubjective awareness of probable falsity . . . cannot be found where, as

here, the publisher's allegations are supported by a multitude of previous reports."

*Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 862 (5th Cir. 1978).[16]  That

holding covers each statement at issue.  In every instance, defendants merely

described or opined on an accusation that many other journalists had reported.  The

existence of so many "published reports in reputable sources . . . precludes a

finding of actual malice as a matter of law."  *McFarlane v. Sheridan Square Press,*

*Inc.*, 91 F.3d 1501, 1510 (D.C. Cir. 1996) (citation omitted).

Defendants' transparent sourcing likewise refutes any inference of

constitutional malice.[17]  Where, as here, "an article contains information that

---

[16] Issued before 1981, *Rosanova* is binding precedent in this Circuit.  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[17] Most of the articles Moore challenges included hyperlinks to other news stories describing

readers can use to verify its content," such as "links" to supporting news stories, it "tends to undermine claims of actual malice."  *Klayman*, 650 F. App'x at 751.  In one illustrative case, the First Circuit held that a former candidate for U.S. Senate failed to plead actual malice where the allegedly defamatory flyer "synced up with" the "two newspaper articles" that the flyer had cited for support.  *Schatz*, 669 F.3d at 53, 58.  The flyer's accurate citation to public source materials foreclosed any inference that the defendant "had serious doubts about [its] truth."  *Id*. at 58.  On a motion to dismiss, the First Circuit held, that "spell[ed] doom" for the candidate's attempt to plead actual malice.  *Id*.  The hyperlinks in the stories at issue here thus confirm that defendants did not act with actual malice.

## II.     Moore Does Not State A Claim For Outrage Against Any Defendant

To plead the tort of outrage, Moore must allege that Defendants' conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it."  *Grantham v. Vanderzyl*, 802 So. 2d 1077, 1081 (Ala. 2001) (Moore, C.J.).

---

the allegations against him.  *See* DX-1, at 1 (surveying hyperlinks).  For example, when Lowe stated (PX-C at 1) that Nelson "accused Moore of attempting to rape her in a car," she linked the word "accused" to an *AL.com* article detailing Nelson's accusation and embedding a video of Nelson and others confirming it.  DX-29 at 1.  In the preceding paragraph, Lowe also linked to the November 9 *Washington Post* story reporting the allegations against Moore by Corfman and others.  The two Dunleavy articles (PX-E at 2, F at 2) included the same link.  And Polumbo's article (PX-H at 1) linked to an *NBC News* report that "nine women" had accused Moore, which in turn cited the same *Post* story.  DX-36 at 1.

25

Because Moore is a public figure, he must also plead actual malice.  *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53 (1988).

Moore pleads none of those elements.  In *Cecil*, he conceded that his outrage allegations "depend for their viability on the success of the defamation claims."  Pl. Opp. to Def's Mot. to Dismiss 29-30, *Moore v. Cecil*, No. 19-cv-01855-CLM (N.D. Ala. Feb. 7, 2020).  The same is true here, and Moore's outrage claim fails for the reasons stated above.  To rise to the level of outrage, the alleged conduct must "go beyond all possible bounds of decency."  *Bennett v. Pipe Works Sols.*, LLC, 2020 WL 1479154, at *9 (N.D. Ala. Mar. 26, 2020) (citation omitted).  Defendants' journalistic activities are nothing of the sort.

## III.  The Court Should Independently Dismiss The Claims Against Clarity Media Group, Inc., Philip Anschutz, and Philip Klein

The Court should dismiss Moore's claims against Clarity Media Group ("Clarity"), Anschutz, and Klein on additional grounds.  Moore does not allege that these three defendants played any role in creating or publishing the articles at issue.  AC ¶¶ 7, 11-12, 41.  Moore therefore fails to state a claim against any of these defendants.  *See Wal-Mart*, 872 So. 2d at 840.

The Court lacks personal jurisdiction over these three defendants for the same reason.  The Supreme Court recognizes "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction."  *Bristol-Myers Squibb Co. v. Superior Court*,

26

137 S. Ct. 1773, 1780 (2017). Neither is present as to Clarity, Anschutz, or Klein. Indeed, each lacks the requisite contacts with Alabama to support jurisdiction under Alabama's long-arm statute or the Fourteenth Amendment.[18]

*First*, Moore alleges no basis for general jurisdiction. Such jurisdiction exists only when a defendant's affiliations with the forum "are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (citation omitted). For an individual defendant, that means the individual's "domicile" or its equivalent; for a corporation, it means the "place of incorporation and principal place of business." *Id.* at 137 (citation omitted). Anschutz and Klein live in Colorado and the District of Columbia, respectively, while Clarity is incorporated in Delaware and headquartered in Colorado. DX-3 at ¶ 2 (Anschutz); DX-4 at ¶ 3 (Klein); DX-5 at ¶ 3 (Clarity).[19] None is remotely "at home" in Alabama. *Daimler*, 571 U.S. at 138-39.

*Second*, specific jurisdiction is lacking because Clarity, Anschutz, and Klein engaged in no "suit-related conduct" that "creat[ed] a substantial connection" with

---

[18] Ala. R. Civ. P. 4.2(b), which "effectively serves as Alabama's 'long-arm' statute," permits the exercise of jurisdiction to the fullest extent constitutionally permissible. *Mewbourne v. Cheytac, USA, LLC*, 2013 WL 1346569, at *3 (N.D. Ala. Mar. 29, 2013).

[19] Anschutz, Klein, and Clarity (through its CFO, Robert Manzi) attach Declarations proving they had no involvement with the articles at issue and no other relevant connections to Alabama. When a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citation omitted).

the forum.  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  Here, the only Alabama

connection Moore even attempts to plead arises from the allegedly defamatory

articles.  AC ¶¶ 15-17, 39.  Publication of a libelous story can, in theory, support

jurisdiction based on the story's intended "reputation-based 'effects'" in the forum.

*Walden*, 571 U.S. at 287.  But such jurisdiction extends only to defendants who

play an intentional role in publishing the stories at issue.  *See id.* at 284 (claim

must "arise out of contacts that [each] defendant *himself* creates with the forum")

(citation omitted).  These three defendants played no such role.  *See Madara v.

Hall*, 916 F.2d 1510, 1518 (11th Cir. 1990) (no jurisdiction where defendant was

not "the entity that . . . published the alleged libel" targeting the forum).

Clarity has only a single alleged connection to this case:  it is the parent

company of defendant WNPC, which publishes the *Examiner*.  AC ¶¶ 10, 41.  A

parent-subsidiary relationship, standing alone, is not enough to tie Clarity to the

libel or to this forum.[20]  And Moore pleads nothing further.  The sum total of the

allegations against Clarity are that it "knew or should have known" of the libel and

"took no action to correct" it.  AC ¶ 41.  Such alleged *inaction* is far from the sort

of "intentional conduct" the Supreme Court requires for specific jurisdiction.

---

[20] *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) ("It is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other.").  Clarity and WNPC were separate entities and observed corporate formalities.  DX-5 at ¶ 4 (Manzi Decl.).

*Walden*, 571 U.S. at 286.  At any rate, Moore's "vague and conclusory allegations" about Clarity fail on their own terms.  *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006).  Clarity was neither involved with nor had any reason to know about the *Examiner* stories at issue.  DX-5 at ¶¶ 4-5 (Manzi Decl.).

The jurisdictional allegations against Anschutz are even weaker.  His only link to this case is his status as Clarity's ultimate "owner."  AC ¶ 12.  From that ownership alone, Moore speculates (¶ 41) that Anschutz "knew or should have known" of WNPC's articles.  Such speculation — seeking to impute WNPC's contacts to the indirect owner of its parent company — violates core principles of corporate separateness.  *See Sherritt*, 216 F.3d at 1293-94.  It is also at odds with the facts.  Anschutz had no involvement in any of the subject articles.  DX-3 at ¶¶ 3-4 (Anschutz Decl.).  Like Clarity, then, he took no actions "expressly aimed" at Alabama.  *Walden*, 571 U.S. at 288 n.7 (citation omitted).

Finally, Moore attempts to tie Klein to Alabama based on allegations that Klein is the *Examiner*'s "Executive Editor" who received Moore's June 2019 letter, which demanded the retraction of one of *Lowe*'s articles.  AC ¶¶ 7, 28.  But courts routinely deny jurisdiction over editors who lack "personal involvement" with the defamatory statements.  *Nat'l Petroleum Mktg., Inc. v. Phoenix Fuel Co.*,

902 F. Supp. 1459, 1469 (D. Utah 1995).[21]  That is the case with Klein.  DX-4 at ¶ 4 (Klein Declaration).  Klein is not alleged to have had, and in fact did not have, any role in editing or publishing the articles here.  *Id.* ¶ 4.  He too engaged in no "suit-related conduct."  *Walden* 571 U.S. at 284.

The after-the-fact letter (PX-D at 1) Moore sent to Klein (and Lowe) is jurisdictionally irrelevant.  Klein's alleged failure to cause the *Examiner* to retract an article written by someone else does not subject him to liability, *see supra* p. 22 (no malice for failure to retract), and does not constitute conduct "expressly aimed" at Alabama, *Walden*, 571 U.S. at 288 n.7.  Defamation is an "intentional tort" that requires a defendant to target the forum.  *Id.* at 288.  Klein's alleged inaction in response to a letter received in Washington, D.C. comes nowhere close.

## CONCLUSION

Without a single fact pleaded in plausible support of a defamatory false statement much less constitutional malice by any defendant in publishing such a statement, and compelling facts to the contrary, the Court should dismiss the Complaint with prejudice.  *See*, *e.g.*, *Butler v. Dunn*, 2019 WL 7041866, at *5 (M.D. Ala. Dec. 20, 2019).

---

[21] *See also Basile v. Prometheus Glob. Media, LLC*, 2016 WL 2987004, at *4 (N.D. Ill. May 24, 2016) (no "personal involvement with distributing or circulating copies"); *Klayman v. Judicial Watch, Inc.*, 2013 WL 4780139, at *10 (S.D. Fla. Sep. 5, 2013) ("Individual Defendants" lacked "collective involvement in the defamatory statement").

Respectfully Submitted By:

/s/ Mark C. Hansen

Mark C. Hansen
KELLOGG HANSEN TODD
FIGEL & FREDERICK PLLC
Sumner Square
1615 M Street, NW, Suite 400
Washington, D.C. 20036
T: (202) 326-7904
F: (202) 326-7999
E: mhansen@kellogghansen.com

/s/ *Samuel H. Franklin*

Samuel H. Franklin
John G. Thompson, Jr.
Jonathan R. Little
LIGHTFOOT FRANKLIN &
WHITE LLC
The Clark Building
400 20th Street North
Birmingham, AL  35203
T: (205) 581-0700
F: (205) 581-0799
E: sfranklin@lightfootlaw.com
E: jthompson@lightfootlaw.com
E: jlittle@lightfootlaw.com

***Counsel for Defendants, Clarity
Media Group, The Washington
Newspaper Publishing Company,
LLC d/b/a MediaDC, Philip
Anschutz, Tiana Lowe, Jerry
Dunleavy, Timothy Carney, Philip
Klein, and Brad Polumbo.***

## **CERTIFICATE OF SERVICE**

I, the undersigned attorney, do hereby certify that on July 1, 2020, the foregoing was electronically filed using the Court's CM/ECF system which will provide notice to all counsel of record:

Larry Klayman, Esq.
KLAYMAN LAW GROUP PA
7050 W. Palmetto Park Rd. #15-287
Boca Raton, FL 33433
T: 561-558-5336
F: 202-381-8839
E: leklayman@gmail.com

Melissa Lee Isaak, Esq.
THE ISAAK LAW FIRM
P.O. Box 4894
Montgomery, AL 36103
T: 334-262-8200
F: 334-819-4072
E: melissa@protectingmen.com

*For Plaintiff*

/s/ Mark C. Hansen
OF COUNSEL