FILED

2022 Mar-11  PM 02:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**ROY S. MOORE,**
      Plaintiff,

**v.**

**TIANA LOWE, JERRY
DUNLEAVY, TIMOTHY
CARNEY, PHILLIP KLEIN,
BRAD POLUMBO, THE
WASHINGTON NEWSPAPER
PUBLISHING COMPANY, LLC,
MEDIA D.C., CLARITY MEDIA
GROUP, and PHILIP
ANSCHUTZ,**
      Defendants.

**Case No. 4:20-cv-124-CLM**

## MEMORANDUM OPINION AND ORDER

Roy Moore sued several defendants associated with the *Washington Examiner*, a conservative online newspaper, for defamation per se, defamation by implication, and intentional infliction of emotional distress. At its core, Moore's suit alleges that these defendants libeled him by falsely reporting on sexual misconduct allegations.

Earlier, the Court granted the defendants' motion to dismiss Moore's First Amended Complaint and allowed Moore to file another complaint that corrected his pleading deficiencies. (Docs. 49, 50). So Moore filed a Second Amended Complaint (doc. 51), and the defendants renewed their motion to dismiss. (Doc. 55). For the reasons below, the Court grants in part and denies in part the renewed motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

On a motion to dismiss, the Court accepts the plaintiff's well-pleaded allegations as true and makes all reasonable inferences in his favor. *Crowder v. Delta Air Lines*, 963 F.3d 1197, 1202 (11th Cir. 2020). The Court may consider exhibits attached to the complaint. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). And it may consider documents attached to a motion to dismiss if they are "central to the plaintiff's claim" and "authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

## I.   Factual Background

Jeff Sessions resigned his Senate seat in 2017 to become Attorney General of the United States. (Doc. 51 at 3 ¶ 14). Roy Moore ran in the special election to replace Sessions. (*Id.*). After winning the Republican nomination, Moore squared off against Democratic nominee Doug Jones in the special election. (*Id.* at 4 ¶ 16).

Shortly before the special election, the *Washington Post* published an article detailing allegations against Moore made by four women: Leigh Corfman, Wendy Miller, Debbie Gibson, and Gloria Deason. (Doc. 31-7).[1] Corfman alleged that when she was 14 years old, then 32-year-old Moore "took off her pants and shirt," "touched her through her bra and underpants," and "guided her hand to his underwear." (*Id.* at 5). The other three women said that "Moore pursued them when they were between the ages of 16 and 18 and he was in his early 30s," but they did not allege "any sort of relationship or sexual contact." (*Id.* at 1).

Four days later, the *Wall Street Journal* reported that a "[f]ifth woman," Beverly Nelson, came forward to accuse "Moore of sexual misconduct." (Doc. 31-20 at 2).[2] The *Journal* report said that, at a press conference, Nelson alleged that Moore "groped her breasts and tried to

---

[1] Stephanie McCrummen, *et al.*, *Woman says Roy Moore initiated sexual encounter when she was 14, he was 32*, WASH. POST (Nov. 9, 2017), https://www.washingtonpost.com/investigations/woman-says-roy-moore-initiated-sexual-encounter-when-she-was-14-he-was-32/2017/11/09/1f495878-c293-11e7-afe9-4f60b5a6c4a0_story.html.

[2] Nicole Hong, *Woman Accuses Roy Moore of Sexually Assaulting Her When She Was a Teen*, WALL. ST. JOURNAL (Nov. 13, 2017), https://www.wsj.com/articles/woman-accuses-roy-moore-of-sexually-assaulting-her-when-she-was-a-teen-1510608351.

initiate sex with her in his car when she was a 16-year-old waitress." (*Id.*). According to a transcript of the press conference, Nelson said that Moore locked her inside his car with him, "began squeezing [her] neck attempting to force [her] head onto his crotch," and "was also trying to pull [her] shirt off." (Doc. 31-19 at 4).[3] She said that Moore ignored her "yelling at him to stop." (*Id.*). And she added that she "was terrified" and "thought that he was going to rape [her]." (*Id.*).

A few days later, the *New York Times* reported that "four more women came forward" with accusations against Moore: Becky Gray, Tina Johnson, Gena Richardson, and Kelly Harrison Thorp. (Doc. 31-22).[4] Those women "complained of being groped, forcibly kissed[,] or subjected to unwanted advances." (*Id.* at 2). Other sources alleged that authorities banned Moore from the mall in Gadsden, Alabama, because of unwanted advances towards underage girls. (*See, e.g.*, docs. 31-14, 31-16, 31-22).[5]

Moore denied the allegations and has labeled them "politically motivated" fabrications. (Doc. 51 at 4 ¶ 16).

Doug Jones won the 2017 special election. The same seat was up for election in 2020, and Moore decided to run again. In the weeks just before his June 20, 2019, announcement, the *Washington Examiner* (a conservative online newspaper) began publishing opinion and news articles that recounted the 2017 allegations against Moore. (*Id.* at 7 ¶ 31). The Court now turns to those articles.

---

[3] *Text of Beverly Young Nelson's Accusation Against Roy Moore*, N.Y. TIMES (Nov. 13, 2017), https://www.nytimes.com/2017/11/13/us/politics/text-beverly-young-nelson-statement.html.

[4] Alan Blinder, *4 More Women Accuse Roy Moore of Misconduct*, N.Y. TIMES (Nov. 15, 2017), https://www.nytimes.com/2017/11/15/us/roy-moore-alabama-republicans.html.

[5] Charles Bethea, *Locals Were Troubled by Roy Moore's Interactions with Teen Girls at the Gadsden Mall*, NEW YORKER (Nov. 13, 2017), https://www.newyorker.com/news/news-desk/locals-were-troubled-by-roy-moores-interactions-with-teen-girls-at-the-gadsden-mall; Blinder, *supra* note 4; Glynn Wilson, *Politics Makes Strange Bedfellows, but Jesus. Not this.*, NEW AM. J. (Nov. 12, 2017), https://www.newamericanjournal.net/2017/11/politics-makes-strange-bedfellows-but-jesus-not-this/.

### A.     Tiana Lowe's First Article

In May 2019, Tiana Lowe published an opinion piece in the *Washington Examiner* titled, "If Alabamans vote for Roy Moore, they deserve Doug Jones." (Doc. 51-1 at 7).[6] Lowe began the piece by saying, "Roy Moore, famous for being banned from a mall because he sexually preyed on underage girls and losing a Senate race in an R+14 state, apparently wants another round at the rodeo." (*Id.*). She then labeled Moore an "accused sexual assailant and pedophile," "a comic book villain," and "a skunk." (*Id.*). And she closed by telling Alabama voters,

> [i]f you back Roy Moore in a primary, every pro-life bill that fails in the Senate means you have extra blood of babies on your hands. If you back Roy Moore in a primary, every vote that Trump loses due to Moore's reentry in the national spotlight will be your fault.

(*Id.*).

### B.     Tiana Lowe's Second Article

The next day, Lowe published another piece in the *Examiner* titled, "Let's examine all the reasons Roy Moore is a terrible human being." (*Id.* at 9).[7] Lowe labeled Moore as "an indefensible person, someone whose record disqualifies him from any position in public life," "a despicable person," "homophobic," and "probably racist." (*Id.* at 9–10).

Lowe wrote that the "sexual misconduct allegations" against Moore are "damning if true" and "overwhelmingly likely to be true." (*Id.* at 9). She wrote that Corfman alleged that, when she was 14 years old, Moore initiated "two intimate encounters with her." (*Id.*). She wrote that Nelson "accused Moore of attempting to rape her in a car when she was 16 years old." (*Id.*). She wrote that Miller "accused Moore of hitting on her while she was under the age of consent in Alabama." (*Id.*). She added that "[a] handful of other women independently alleged having intimate

---

[6] Tiana Lowe, *If Alabamans vote for Roy Moore, they deserve Doug Jones*, WASH. EXAMINER (May 28, 2019), https://www.washingtonexaminer.com/opinion/if-alabamans-vote-for-roy-moore-they-deserve-doug-jones.

[7] Tiana Lowe, *Let's examine all the reasons Roy Moore is a terrible human being*, WASH. EXAMINER (May 29, 2019), https://www.washingtonexaminer.com/opinion/lets-examine-all-the-reasons-roy-moore-is-a-terrible-human-being.

relationships with Moore in their teens." (*Id.*). And finally, she stated that "multiple people allege that Moore was banned from the Gadsden Mall, his reported playground for picking up teen girls." (*Id.*).

After this article came out, Moore's attorney sent a retraction demand to Lowe and Philip Klein (Executive Editor of the *Washington Examiner*) and claimed that the article was "highly defamatory." (*Id.* at 12). They didn't respond or retract the article. (Doc. 51 at 12 ¶ 45).

### C.   Jerry Dunleavy's First Article

The same day that Moore announced his candidacy, the *Examiner* published a news article by Jerry Dunleavy titled, "Roy Moore says he will run for Senate again in 2020." (Doc. 51-1 at 16).[8] Dunleavy reported that "a number of women came forward during [Moore's 2017] campaign to claim that Moore had sexually assaulted them," and added that "[t]wo of the accusers were underage at the time of the alleged incidents." (*Id.*). After commenting on conservative opposition to Moore's 2020 candidacy, Dunleavy summarized the 2017 accusations against Moore, which included saying that Nelson alleged that "Moore attempted to rape her in a car." (*Id.* at 17).

### D.   Jerry Dunleavy's Second Article

A month later, the *Examiner* published another Dunleavy news article titled, "Watchdog files complaint over possible forged signatures on documents from Roy Moore charity." (*Id.* at 20).[9] The article focused on a complaint against "the Foundation for Moral Law," which it described as "a Christian nonprofit activist group founded by accused sexual predator and current Senate candidate Roy Moore." (*Id.*). Dunleavy wrote that "a number of women came forward during [Moore's 2017 campaign] to claim that Moore had sexually assaulted them, including two accusers who were underage at the time of the alleged incidents." (*Id.* at 21).

---

[8] Jerry Dunleavy, *Roy Moore says he will run for Senate again in 2020*, WASH. EXAMINER (June 20, 2019), https://www.washingtonexaminer.com/news/roy-moore-says-he-will-run-for-senate-again-in-2020.

[9] Jerry Dunleavy, *Watchdog files complaint over possible forged signatures on documents from Roy Moore charity*, WASH. EXAMINER (July 12, 2019), https://www.washingtonexaminer.com/news/watchdog-files-complaint-over-possible-forged-signatures-on-documents-from-roy-moore-charity.

### E.     Tiana Lowe's Third Article

The next month, Lowe wrote another piece for the *Examiner* titled, "Laura Loomer may be a laughing stock, but it's pretty unfunny when Republicans back her." (*Id.* at 24).[10] In the article, Lowe called Moore a "credibly accused sexually pedophilic predator." (*Id.* at 25).

### F.     Brad Polumbo's Article

And a few months later, the *Washington Examiner* published an opinion piece by Brad Polumbo titled, "Sorry not sorry. Roy Moore, the GOP is done with you." (*Id.* at 27).[11] The article began by calling Moore "the former judge and alleged sexual predator." (*Id.*). And after discussing conservative opposition and detailing Alabama voters' "unfavorabl[e]" views of Moore, Polumbo added that Moore "has been credibly accused of sexual misconduct by multiple women who were just teenagers at the time." (*Id.* at 28).

———

More than four years after the initial *Washington Post* article, and more than two years after the *Washington Examiner* articles at issue here, Moore's accusers maintain that they told the truth, and Moore maintains that he was falsely accused for political reasons.

## II.     Procedural Background

In his three complaints, Moore asserts three claims against nine defendants: (1) defamation per se; (2) defamation by implication; and (3) intentional infliction of emotional distress (*i.e.*, outrage). (Docs. 1, 5, 51). Moore filed his initial complaint, then amended it, before the defendants submitted any responsive pleading. (Doc. 1, 5). The defendants then moved to dismiss the First Amended Complaint. (Doc. 31). They argued

---

[10] Tiana Lowe, *Laura Loomer may be a laughing stock, but it's pretty unfunny when Republicans back her*, WASH. EXAMINER (Aug. 6, 2019), https://www.washingtonexaminer.com/opinion/laura-loomer-may-be-a-laughing-stock-but-its-pretty-unfunny-when-republicans-back-her.

[11] Brad Polumbo, *Sorry not sorry. Roy Moore, the GOP is done with you*, WASH. EXAMINER (Nov. 27, 2019), https://www.washingtonexaminer.com/tag/donald-trump?source=%2Fopinion%2Fthe-gop-is-done-with-roy-moores-bigotry-and-his-alabama-senate-2020-campaign.

that Moore had not stated a claim and that the Court lacked personal jurisdiction over Clarity Media Group, Philip Anschutz, and Philip Klein.

During a hearing on that motion, Moore agreed to amend his complaint a second time to correct pleading deficiencies. (Doc. 54 at 82). The Court entered an opinion and an order that: (1) dismissed Clarity, Anschutz, and Klein for lack of jurisdiction; and (2) dismissed Moore's claims without prejudice. (Docs 49, 50). Moore then filed a Second Amended Complaint (doc. 51), and the defendants moved to dismiss it with prejudice. (Doc. 55).

At this point, the Court has published two opinions in Moore's defamation case against those whom he says defamed him in 2017. *Moore v. Cecil*, 488 F. Supp. 3d 1144 (N.D. Ala. 2020) ("*Cecil I*"); *Moore v. Cecil*, No. 4:19-cv-1855, 2021 WL 1208870 (N.D. Ala. Mar. 31, 2021) ("*Cecil II*"). And the Court has issued one opinion in this case. *Moore v. Lowe*, 4:20-cv-124, 2021 WL 1208871 (N.D. Ala. Mar. 31, 2021) ("*Lowe I*").

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court accepts the plaintiff's well-pleaded allegations as true and makes reasonable inferences in his favor. *Crowder*, 963 F.3d at 1202. But those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the Court disregards both conclusory statements and "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

The Court divides its discussion into three parts. First, personal jurisdiction over Clarity Media Group, Philip Anschutz, and Philip Klein. Second, the defamation claims. And third, the IIED/outrage claim.

## I.  **Personal Jurisdiction over Clarity, Anschutz, and Klein**

The Court has a continuing and independent obligation to ensure that jurisdiction exists. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020). "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). And the Court cannot "assume jurisdiction for the purpose of deciding the merits." *Id.* at 431.

In *Lowe I*, the Court held that it lacked personal jurisdiction over Clarity, Anschutz, and Klein because Moore did not "plead any facts" in his First Amended Complaint to support general or specific personal jurisdiction. (Doc. 49 at 4–5). The defendants say that the Second Amended Complaint similarly fails to plead jurisdictionally adequate facts for these three defendants. (Doc. 55 at 20–21).

**The Law**: "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1275 (11th Cir. 2009). Two types of personal jurisdiction comply with due process: "general (sometimes called all-purpose) and specific (sometimes called case-linked) jurisdiction." *Bristol-Myers Squibb Co. v. Sup. Ct.*, 137 S. Ct. 1773, 1780 (2017) (quotation marks omitted).

The plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp.*, 556 F.3d at 1274. "When a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position, the

burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013); *see also United Techs. Corp.*, 556 F.3d at 1274 (applying this standard at the motion-to-dismiss stage).

As explained below, there is no basis to exercise general or specific personal jurisdiction over Clarity, Anschutz, or Klein. That means the exercise of personal jurisdiction over them would violate due process.

## A.    General Personal Jurisdiction

General personal jurisdiction exists if a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Typically, "an individual is subject to general jurisdiction in her place of domicile," and a corporation in "its place[s] of incorporation and principal place of business." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

The Second Amended Complaint alleges that Clarity "is located in New York, NY." (Doc. 51 at 3 ¶ 11). It alleges that Anschutz "is a citizen of Colorado." (*Id.* at 3 ¶ 12). And it alleges that Klein "is a citizen of the District of Columbia." (*Id.* at 3 ¶ 7). None is "at home" in Alabama. *Goodyear*, 564 U.S. at 919. So none is subject to general jurisdiction.

## B.    Specific Personal Jurisdiction

Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (cleaned up). The Due Process Clause imposes three conditions on specific jurisdiction. First, the defendant "must take some act by which it purposely avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co.*, 141 S. Ct. at 1024 (quotation marks and alteration omitted). Second, the plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum." *Id.* at 1025 (quotation marks omitted). And third, the exercise of jurisdiction must not "offend traditional notions of fair play and substantial justice." *Id.* at 1024. In

sum, the defendant's "suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284.

In this intentional-tort case, "there are two applicable tests for determining whether purposeful availment occurred." *Louis Vuitton*, 736 F.3d at 1356. One is the "traditional minimum contacts test," which requires the Court to:

> assess the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum.

*Id.* at 1357. The other is the "effects test"—another test that does not supplant the traditional test—which authorizes specific jurisdiction in tort cases when the tortious conduct was: (1) intentional; (2) aimed at the forum State; and (3) caused harm that the defendant should have anticipated the plaintiff would suffer in the forum State. *Id.* at 1356.

In the Second Amended Complaint, Moore alleges that Clarity is the parent company of the Washington Newspaper Publishing Company, LLC, which publishes the *Washington Examiner*. (Doc. 51 at 6 ¶ 25). Anschutz, according to the complaint, "is the owner of Clarity." (*Id.* at 3 ¶ 12). Moore alleges that the *Washington Examiner* "falls under the authority" of Clarity and Anschutz and thus both "knew or should have known" about the allegedly defamatory publications. (*Id.* at 15 ¶ 60). And he says that they "are responsible for the oversight and supervision of the publications." (*Id.* at 16 ¶ 61). Lastly, Moore alleges that Klein is the "Executive Editor" of the *Washington Examiner*. (Doc. 51 at 3 ¶ 7).

In response, each of these defendants filed an affidavit denying their connections to the allegedly defamatory articles. (Docs. 31-4, 31-5, 31-6):

- The CFO of Clarity stated that Clarity and the Washington Newspaper Publishing Company "are separate entities," that Clarity "does not exercise day-to-day control over WNPC's

operations," and that it "plays no role in writing, editing, or publishing the *Washington Examiner*." (Doc. 31-6 at 3). He added that Clarity played no role in the writing, editing, or publishing of the allegedly defamatory articles. (*Id*.).

- Anschutz said he "had no involvement with the publication of any of [the] articles," that he "did not write, edit, approve, or consult on any of them," and that he "did not become aware of them until after they were published." (Doc. 31-4 at 3).

- Klein stated that, although he was the Executive Editor of the *Washington Examiner* from 2018–19, it "was not a supervisory position." (Doc. 31-5 at 2). He explained that he "had no involvement with the publication of any of [the] articles," that he "did not write, edit, approve, or consult on any of them," and that he "did not become aware of them until after they were published." (*Id*. at 3).

These affidavits triggered Moore's burden "to produce evidence supporting jurisdiction." *Louis Vuitton*, 736 F.3d at 1350. But Moore has produced no evidence to rebut their affidavits asserting that each played no role in (or had no pre-publication knowledge of) the articles.

To be sure, Clarity, Anschutz, and Klein are entitled to dismissal, even without their affidavits, because Moore has not plausibly alleged facts to support specific jurisdiction. He merely offers a conclusory and speculative allegation that these defendants knew or should have known about the articles. That is not enough.

For contrast, consider the allegations that sufficed in *Calder v. Jones*, 465 U.S. 783 (1984). The Supreme Court held that the district court could exercise jurisdiction over a reporter who "wrote" and an editor who "edited" the allegedly defamatory articles. *Id.* at 789. The Court explained that these defendants "expressly aimed" "their intentional, and allegedly tortious, actions" towards the forum State. *Id.* In this case, though, Moore has neither alleged nor produced evidence to support that any of these defendants participated in the publication process in a similarly active and aimed way.

For Clarity and Anschutz, Moore tries to circumvent these flaws by pointing to principles of vicarious liability. (Doc. 57 at 17–19). But

vicarious liability is not an issue in this case. And this argument conflicts with the rule that the jurisdictionally relevant relationship between the defendant and forum State "must arise out of contacts that the 'defendant *himself* creates with the forum state.'" *Walden*, 571 U.S. at 284. Without such allegations (and an evidentiary showing), Moore's argument fails.

For Klein, Moore emphasizes that he addressed his retraction-demand letter to both Lowe and Klein. (Doc. 57 at 17). But Moore targeting Klein with a letter doesn't prove that Klein targeted Alabama by playing an active, purposeful, or intentional role in the articles. And Klein's un-rebutted affidavit explains that he played no such role. So this argument fails, too.

Moore has not plausibly alleged or met his evidentiary burden of showing that any of these defendants had adequate suit-related contacts with Alabama. So he cannot satisfy the "traditional minimum contacts test" or the "effects test." *Louis Vuitton*, 736 F.3d at 1356–57. The Court thus lacks specific jurisdiction.

\* \* \*

In sum, Moore has not shown that the Court can exercise general or specific personal jurisdiction over Clarity, Anschutz, or Klein. So the Court dismisses each from the case.

## II.    The Defamation Claims (Counts I & II)

In his Second Amended Complaint, Moore brings separate claims for defamation per se (Count I) and defamation by implication (Count II). After explaining the framework for a public figure's defamation claim, the Court will address each allegedly defamatory statement.

### A.    The Public Figure's Defamation Framework

To state an ordinary claim for defamation under Alabama law, the plaintiff must plausibly allege: (1) "a false <u>and</u> defamatory statement concerning the plaintiff"; (2) "an unprivileged communication of that statement to a third party"; (3) "fault amounting at least to negligence on the part of the defendant"; and (4) "either actionability of the statement

irrespective of special harm or the existence of special harm caused by the publication of the statement." *Dolgencorp, LLC v. Spence*, 224 So. 3d 173, 186 (Ala. 2016). Defamation is actionable per se (that is, without proving special harm), if "the language used exposes the plaintiff to public ridicule or contempt." *Liberty Nat'l Life Ins. Co. v. Daugherty*, 840 So. 2d 152, 157 (Ala. 2002). And defamation by implication includes the deceptive juxtaposition of facts to create a false and defamatory implication. *Finebaum v. Coulter*, 854 So. 2d 1120, 1124–25 (Ala. 2003).

Moore admits that he is a public figure, so "the First Amendment imposes additional limitations." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021), *petition for cert. filed*, No. 21-802 (Nov. 20, 2021). "First, the alleged defamatory statement must be 'sufficiently factual to be susceptible of being proved true or false.'" *Id.* (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990)). "Second, the statement must be actually false." *Id.*[12] "And third, a public-figure plaintiff must prove that the defendant made the alleged defamatory statement with 'actual malice'—'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). "This actual malice test is subjective; the public-figure plaintiff must show that the defendant '*in fact* entertained serious doubts as to the truth' of the statement." *Id.* (quoting *Berisha v. Lawson*, 973 F.3d 1304, 1312 (11th Cir. 2020)).

In *Lowe I*, the Court instructed Moore to "specify the defamatory statement and then plead facts that would establish both defamation under Alabama law and actual malice under the First Amendment for that statement." (Doc. 49 at 5; *see also id.* at 6). For his defamation-per-se claim, Moore specifies five allegedly defamatory statements and briefly mentions several more statements. For his defamation-by-implication claim, he identifies 10 statements. With that backdrop, the Court turns to Moore's Second Amended Complaint.

---

[12] Taken together, these two limitations show that "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018).

### B.    Moore's defamation-per-se allegations

As discussed below, Moore can proceed to discovery on one basis for his defamation per se count. The Court dismisses all other bases.

### 1.    Lowe's statement that Moore was "famous for being banned from a mall because he sexually preyed on underage girls"

Moore alleges that, in her first article, Tiana Lowe defamed him by saying that he was "famous for being banned from a mall because he sexually preyed on underage girls." (Doc. 51 at 17).[13] The Court dismisses this basis for a few reasons.

First, that Lowe labeled Moore "famous" for the alleged mall ban is not actionable. A public-figure plaintiff cannot complain about "rhetorical hyperbole." *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002). The First Amendment protects the "exaggeration and non-literal commentary" which "have become an integral part of social discourse." *Id.* (citation and quotation marks omitted). No reasonable reader would interpret Lowe's use of the word "famous" as anything other than rhetorical hyperbole.

Second, Lowe's statement that Moore was "banned from a mall" is not actionable, either. Binding circuit precedent explains that actual malice "cannot be found where . . . the publisher's allegations are supported by a multitude of previous reports upon which the publisher reasonably relied." *Rosanova v. Playboy Enter., Inc.*, 580 F.2d 859, 862 (5th Cir. 1978). In other words, the reliance on "many independent sources, alone, should defeat any claim of actual malice." *Berisha*, 973 F.3d at 1313. By the time of Lowe's article, several sources corroborated Lowe's statement about a mall ban. (*See, e.g.*, docs. 31-14, 31-16, 31-21, 31-22, 31-25, 31-26, 31-27, 31-28, 31-29, 31-32, 43-3). The sources include, among others, New Yorker, Fox News, The New York Times, The Atlantic, ABC, NBC, CNBC, and Vice News. This multitude of previous reporting defeats any allegation of actual malice.

---

[13] *See* Lowe, *supra* note 6.

Third, it is not actionable that Lowe said the reason for Moore's alleged ban was that "he sexually preyed on underage girls" because, again, several existing sources corroborated the statement. (*See, e.g.*, doc. 31-14 ("Sources tell me Moore was actually banned from the Gadsden Mall and the YMCA for his inappropriate behavior of soliciting sex from young girls"); doc. 31-16 ("because he repeatedly badgered teen-age girls"); doc. 31-21 ("for harassing girls"); doc. 31-22 (reporting that Becky Gray alleged that "in her late teens or early 20s" she "frequently saw" Moore "talking with young women," Moore "would not leave her alone," and she was "later told that Mr. Moore had been banned from the mall"); doc. 31-25 ("for pursuing teenage girls as an adult"); doc. 31-26 (reporting that Moore was banned after Gray "complained about his repeated, unwanted advances toward her"); 31-27 (reporting on Gray's allegations); 31-29 ("because of his aggressive sexual pursuit of teenage girls"). These published reports defeat Moore's allegations of actual malice.

Moore's counterarguments do not persuade the Court otherwise. First, the widespread reporting rebuts Moore's argument that Lowe transformed a "rumor[]" into a statement of fact. (Doc. 57 at 9; *see also* doc. 31-29 ("As for Moore, additional reports indicate that at one point he was even banned from a local mall in Gadsden, Alabama, because of his aggressive sexual pursuit of teenage girls.")). Second, his argument that several former mall employees disputed the ban (doc. 57 at 9–11) fails because Lowe had no duty to investigate absent a plausible allegation that she "purposefully avoided further investigation with the intent to avoid the truth." *Michel v. NYP Holdings*, 816 F.3d 686, 703 (11th Cir. 2016). And Moore has not plausibly alleged purposeful avoidance here.

For these reasons, the Court dismisses this basis for Moore's claim.

### 2. Lowe's statement that "[a] handful of other women independently alleged having intimate relationships with Moore in their teens"

Moore alleges that Lowe defamed him in her second article by writing that, beyond Corfman, Nelson, and Miller, "[a] handful of other women independently alleged having intimate relationships with Moore in their teens." (Doc. 51 at 17–18).[14] This basis may proceed to discovery.

In her second article, Lowe described the allegations from Corfman, Nelson, and Miller. (Doc. 51-1 at 9). First, Lowe reported that Corfman alleged having "two intimate encounters" with Moore, and then Lowe said that the encounters would "constitute second degree sexual abuse under Alabama law." (*Id.*) She wrote that Nelson "accused Moore of attempting to rape her in a car when she was 16 years old" and that Wendy Miller "accused Moore of hitting on her while she was under the age of consent in Alabama." (*Id.*). After that, she added that "[a] handful of other women independently alleged having intimate relationships with Moore in their teens." (*Id.*). Moore focuses on the phrase "intimate relationships."

Several other women did allege *some* sort of relationship with Moore during their teenage years. As reported by the Washington Post in November 2017, Gloria Deason alleged that she "dated" Moore when she was 18 and Moore was 32. (Doc. 31-7 at 7). She said that Moore "took her to his house at least two times" and that "their physical relationship did not go further than kissing and hugging." (*Id.*). Debbie Gibson alleged that she "dated" Moore when she was 17 and he was 34. (*Id.* at 8). She said that they "kissed . . . once in his bedroom and once by the pool at a local country club." (*Id.*). And Gena Richardson alleged that, when she was 18, then 30-year-old Moore took her on "a date that ended with Moore driving her to her car in a dark parking lot behind Sears and giving her what she called an unwanted, 'forceful' kiss that left her scared." (Doc. 31-24 at 2).

The questions are whether these reports supported Lowe's statement that other women alleged "having intimate relationships with Moore," and whether Moore plausibly alleged actual malice.

---

[14] *See* Lowe, *supra* note 7.

> *i. Is the statement reasonably capable of a defamatory meaning?*

Moore argues that Lowe's statement is false and defamatory because "[t]he common reader would assume an 'intimate relationship' would entail much more than a couple of kisses, with the most likely impression being a sexual relationship." (Doc. 57 at 14). The defendants contend that these "were 'intimate' encounters in the ordinary sense of that word" because they included dating and kissing. (Doc. 58 at 6–7).

The Court applies the meaning of words and phrases that "readers of common and reasonable understanding would ascribe." *Kelly v. Arrington*, 624 So. 2d 546, 548 (Ala. 1993). It is enough that the statement is "reasonably capable of a defamatory meaning." *Id.*

The word "intimate," in context, most naturally means "having, or being likely to cause, a very close friendship or personal or sexual relationship." Intimate, CAMBRIDGE DICTIONARY, https://dictionar y.cambridge.org/us/dictionary/english/intimate (last visited Mar. 11, 2022).[15] A reader of common and reasonable understanding *could* interpret Lowe's use of the phrase "intimate relationship" to mean that Moore engaged in sexual intercourse with "a handful of other women . . . in their teens," which would be false because it is more than dating and kissing. Sexual, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.or g/us/dictionary/english/sexual (last visited Mar. 11, 2022) ("relating to the activity of sex"). This is particularly true because, in the same article, Lowe used the word "intimate" to describe Moore's relationship with Corfman, who alleged that when she was 14 years old, Moore "took off her pants and shirt," "touched her through her bra and underpants," and "guided her hand to his underwear." (Doc. 31-7 at 5). So the court finds that Lowe's statement is "reasonably capable of a defamatory meaning," *Kelly*, 624 So. 2d at 548, and thus Moore has plausibly alleged a "false <u>and</u> defamatory statement." *Dolgencorp*, 224 So. 3d at 186.

---

[15] The defendants cite this definition and emphasize that Moore's relationship with these women was "personal." (Doc. 58 at 7). Although a reader *might* understand "intimate" to mean a personal relationship, the defendants' argument does not rebut the reasonable possibility that a reader could also interpret "intimate" to mean a sexual relationship.

### ii.   Did Moore plausibly allege actual malice?

That leads to a second question: has Moore, as a public figure, adequately alleged actual malice for this statement? *N.Y. Times Co*, 376 U.S. at 279–80. Albeit narrowly, he has.

As the Court explained in *Cecil II*, five circuits and the Alabama Supreme Court "have held that to establish actual malice when a word has more than one meaning, a public figure must show 'that the defendant either intended to communicate the defamatory meaning or knew of the defamatory meaning and was reckless in regard to it.'" 2021 WL 1208870, at *8 (collecting cases and quoting *Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 90 (3d Cir. 2013)).

Moore's actual-malice allegation is borderline conclusory: "Lowe's statement . . . is also a lie and yet [she] published the lie all the same. Thus, Lowe had knowledge that the statement was false **or** a reckless disregard of whether the statement was false or not." (Doc. 51 at 18 ¶ 68). Elsewhere in his complaint, he alleges that "there was never any intimate 'sexual' behavior with teens." (*id.* at 10 ¶ 40). From the complaint, a reasonable reader could infer that Lowe: (1) knew what the "other women" alleged; (2) understood the various possible interpretations of the phrase "intimate relationship"; and (3) knew that Moore did not have a sexual relationship with the "other women" because none of them alleged that he had. As a result, Moore has narrowly but plausibly alleged that Lowe knew of the defamatory meaning a reader could give the phrase "intimate relationships" and acted recklessly with it. *See Cecil II*, 2021 WL 1208870, at *8. So Moore adequately alleged actual malice.

* * *

To sum up, Moore's defamation-per-se claim survives the motion to dismiss to the extent that he claims that Lowe defamed him by reporting that "[a] handful of other women independently alleged having intimate relationships with Moore in their teens." (Doc. 51 at 17–18).

### 3.    Lowe's other statements

In the defamation-per-se section, Moore identifies several other statements that Lowe made in her three articles. (Doc. 51 at 16–17 ¶¶ 65–67). Those include her calling Moore an "accused sexual assailant," "pedophile," "a comic book villain," "a skunk," "a despicable person, someone whose record disqualifies him from any position in public life," "homophobic," "probably racist," "a terrible human being," and "a credibly accused sexually pedophilic predator." (*Id.*). Those also include writing:

- "If you back Roy Moore in a primary, every pro-life bill that fails in the Senate means that you have extra blood of babies on your hands."
- that the sexual-misconduct allegations against Moore were "overwhelmingly likely to be true."
- that Nelson accused Moore of "attempting to rape her."
- that Corfman accused Moore of initiating "two intimate encounters" that amounted to "second degree sexual abuse."

(*Id.*). But Moore made no effort to allege facts that would plausibly support an actual-malice finding. Keeping in mind that "[t]hreadbare elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the Court grants the defendants' motion to dismiss Moore's defamation-per-se claim to the extent that Moore relies on these statements from Lowe.

### 4.    Dunleavy's statement that Nelson alleged that "Moore attempted to rape her in a car"

Moore alleges that, in his first article, Jerry Dunleavy defamed him by writing: "Beverly Young Nelson, a Trump supporter, said that when she was 16 years old, Moore attempted to rape her in a car." (Doc. 51 at 19–20).[16] The Court dismisses this basis for Moore's claim.

The dispositive issue is whether Moore plausibly alleged that Dunleavy's statement was "false <u>and</u> defamatory." *Dolgencorp*, 224 So. 3d at 186. "Truthful statements cannot, as a matter of law, have a

---

[16] *See* Dunleavy, *supra* note 8.

defamatory meaning." *Fed. Credit, Inc. v. Fuller*, 72 So. 3d 5, 10 (Ala. 2011). "The common law of libel . . . overlooks minor inaccuracies and concentrates upon *substantial truth*." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516 (1991) (emphasis added). So minor inaccuracies do not satisfy the falsity component if "the substance, the gist, the sting, of the libelous charge be justified." *Id.* at 517; *see also Drill Parts & Serv. Co., Inc. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1290 (Ala. 1993) (finding no "false meaning" in articles the trial court labeled "substantially correct").

In her press conference, Nelson said that when she was 16 and working at a restaurant, Moore approached and offered her a ride home. (Doc. 31-19 at 3–4). She said, after getting in his car, Moore "drove to the back of the restaurant." (*Id.* at 4). At that point, she became "alarmed" and "immediately asked him what he was doing." (*Id.*). Then, in her words:

> Instead of answering my question, Mr. Moore reached over and began groping me, putting his hands on my breasts. I tried to open my car door to leave, but he reached over and locked it so I could not get out. I tried fighting him off, while yelling at him to stop, but instead of stopping he began squeezing my neck attempting to force my head onto his crotch. I continued to struggle. I was determined that I was [sic] not allow him to force me to have sex with him. I was terrified. He was also trying to pull my shirt off. I thought that he was going to rape me. I was twisting and struggling and begging him to stop. I had tears running down my face.

(*Id.*). She added that "[a]t some point he gave up," she exited his car, and Moore left. (*Id.*).

Dunleavy wrote that Nelson accused Moore of "attempt[ing] to rape her in a car." (Doc. 51-1 at 17). Moore contends that the statement is false and defamatory because Nelson merely "stated that she 'thought' Roy Moore was going to rape her." (Doc. 57 at 8). The defendants counter that it was fair and accurate to label Nelson's statement as "an accusation of attempted rape" based on her description of the altercation and her statement that—at the time of the incident—she believed that Moore "was

going to rape [her]." (Doc. 55 at 9–10). They also argue that, legally speaking, Moore's attempt to force Nelson to perform oral sodomy constitutes rape under Alabama law. (*Id.* at 9).

Again, the Court applies the meaning of words and phrases that "readers of common and reasonable understanding would ascribe." *Kelly*, 624 So. 2d at 548. Such a reader could interpret Dunleavy's use of the phrase "attempted to rape" to mean that Moore tried to forcibly engage in sexual intercourse with Nelson by penetrating her vagina. While Nelson's allegations would support findings that (1) Moore attempted to engage in forced oral sodomy (as in, penetration of the mouth with his penis), and (2) Nelson subjectively believed that Moore would try—but had yet to try—to vaginally rape her, they would not support a finding that Moore affirmatively tried to force vaginal, sexual intercourse. To that extent (and that extent only), Dunleavy's statement is reasonably capable of a false and defamatory meaning.

Even so, that falsity is not actionable because Dunleavy's statement is "substantially tru[e]." *Masson*, 501 U.S. at 516. Even if a reader interprets Dunleavy's statement to mean forced vaginal sex rather than forced oral sex, the statement still carries "the substance, the gist, [and] the sting" of truth that justifies Dunleavy's reporting. *Id.* at 517. The "gist" of Dunleavy's statement is that Nelson accused Moore of trying to force her to engage in a forced sexual act with him. It carries substantial truth (even if technically inaccurate) to take Nelson's recounting of Moore's conduct—locking Nelson in a car, grabbing her neck, and trying to take her clothes off, to the point Nelson believed Moore *would* rape her—and say that Nelson accused Moore of *trying* to rape her. As a result, Moore cannot show that Dunleavy's statement was actionably false. So the Court dismisses this basis of Moore's defamation-per-se claim.

### 5. Dunleavy's statement that "a number of women came forward during the [2017] campaign to claim that Moore had sexually assaulted them"

Moore alleges that, in his second article, Dunleavy defamed him by writing that "a number of women came forward during [Moore's 2017] campaign to claim that Moore had sexually assaulted them, including two

accusers who were underage at the time of the alleged incidents." (Doc. 51 at 19–20).[17] The Court dismisses this basis for Moore's claim.

The statement is not actionable because it is substantially true. *See Masson*, 501 U.S. at 516; *Fed. Credit, Inc.*, 72 So. 3d at 10. First, Corfman alleged that she was 14 when Moore "took off her pants and shirt," "touched her through her bra and underpants," and "guided her hand to his underwear." (Doc. 31-7 at 5). Second, Nelson alleged that she was 16 when Moore "squeez[ed] her neck attempting to force [her] head onto his crotch." (Doc. 31-19 at 4). That multiple women accused Moore of engaging in sexual misconduct while they were younger than 18 makes Dunleavy's statement true. And even if a reasonable reader could understand "underage" to mean younger than 16 (that is, the age of consent in Alabama, ALA. CODE 13A-6-70(c)(1)), Moore has not plausibly alleged actual malice—that is, that Dunleavy intended for readers to understand "underage" to mean younger than 16 or that he was reckless with regard to the term. So the statement is non-actionable, and the Court dismisses this basis.[18]

### 6. Polumbo's statement that Moore was "an alleged sexual predator" who had "been credibly accused of sexual misconduct by multiple women who were just teenagers at the time"

Moore alleges that, in his one relevant article, Brad Polumbo defamed him by writing that Moore was "an alleged sexual predator" who had "been credibly accused of sexual misconduct by multiple women who were just teenagers at the time." (Doc. 51 at 21–22).[19]

The Court dismisses this basis for Moore's claim. First, Polumbo's assertion that Moore's accusers were credible is a non-actionable "statement[] of pure opinion." *Turner*, 879 F.3d at 1262. Second, Corfman and Nelson were younger than 18 at the time of Moore's alleged

---

[17] *See* Dunleavy, *supra* note 9.

[18] Moore does not argue against dismissal of this claim in his response brief. (Doc. 57). But a plaintiff does not abandon a claim "by failing to address them in his response brief to the defendants' motion to dismiss" because abandonment "go[es] beyond the face of the complaint." *Boyd v. Peet*, 249 F. App'x 155, 157 (11th Cir. 2007).

[19] *See* Polumbo, *supra* note 11.

misconduct, *see supra* at 22. That means that Polumbo's statement that Moore was "an alleged sexual predator" and that Moore had been "accused of sexual misconduct by multiple women who were just teenagers at the time" are true or substantially true statements.

\* \* \*

To sum up, Moore may proceed on his claim that Lowe defamed him per se by writing that "[a] handful of other women independently alleged having intimate relationships with Moore in their teens." (Doc. 51 at 16–18). The Court dismisses the rest of Moore's defamation per se claim with prejudice. *See infra* at 36.

## C. Moore's defamation-by-implication allegations

Moore asserts that the defendants defamed him by implication in 10 statements. He may proceed on one of the 10. The Court dismisses the other nine.

### 1. Lowe's juxtaposition of Corfman's and Nelson's allegations with the statement that other women alleged having "intimate relationships with Moore in their teens"

Moore alleges that, in her second article, Lowe defamed him by juxtaposing Corfman's and Nelson's allegations with the statement that "other women independently alleged having intimate relationships with Moore in their teens." (Doc. 51 at 24–25).[20] According to Moore, Lowe "falsely and maliciously implie[d] that a number of 'other' teens had intimate 'sexual' relationships with Judge Moore." (*Id.* at 25 ¶ 84). This basis survives the motion to dismiss.

In her second article, Lowe reported that Corfman alleged having "two intimate encounters" with Moore that would "constitute second degree sexual abuse under Alabama law." (Doc. 51-1 at 9). She then said that Nelson "accused Moore of attempting to rape her in a car when she was 16 years old." (*Id.*). She said that Miller "accused Moore of hitting on her while she was under the age of consent in Alabama." (*Id.*). And then

---

[20] *See* Lowe, *supra* note 7.

she added that "[a] handful of other women independently alleged having intimate relationships with Moore in their teens." (*Id.*).

The Court has already ruled that Moore may proceed on a defamation-per-se theory that use of the word "intimate" was reasonably capable of the defamatory suggestion that Moore had a sexual relationship with "other women . . . in their teens." *See supra* at 16–18. Moore's juxtaposition theory is slightly different: Moore says that Lowe's juxtaposition of Corfman's and Nelson's allegations with the "other women" implied that Moore had a similar relationship/altercation with "other women . . . in their teens." This theory also survives to discovery.

A reporter's deliberate alteration of a quote satisfies the "false and defamatory" component, *Dolgencorp*, 224 So. 3d at 186, and the actual-malice component, if "the alteration results in a material change in the meaning conveyed by the statement." *Masson*, 501 U.S. at 517. Likewise, a deceptive juxtaposition is actionable if: (1) the juxtaposed statements are reasonably capable of false and defamatory implication; and (2) the juxtaposition materially changes the story.

The juxtaposition of Corfman's and Nelson's allegations with the statement that "a handful of other women independently alleged having intimate relationships with Moore in their teens" could reasonably be understood to imply that Moore's relationships/altercations with the "other women" were like the altercations that Corfman and Nelson described.[21] That is all the more true because Lowe used the word "intimate" to describe Moore's encounter with Corfman and his encounters with the "other women."

Again, Corfman alleged that, when she was 14, Moore "took off her pants and shirt," "touched her through her bra and underpants," and

---

[21] Moore's specific allegation is that "Lowe . . . falsely and maliciously implie[d] that a number of 'other' teens had intimate 'sexual' relationships with Judge Moore." (Doc. 51 at 25 ¶ 84). That allegation is slightly different that the false and defamatory implication that the Court identifies as actionable. The Court disagrees with Moore that the juxtaposition alone implies a "sexual" relationship with the "other women" because neither woman alleged sexual intercourse. (Doc. 31-7 at 3 ("She [Corfman] says they did not have intercourse."); doc. 31-19 (no mention of engagement in sexual intercourse in Nelson's press-conference transcript)). But a reasonable juror could reasonably infer from Moore's allegations that Lowe's statement falsely implied that Moore treated the "other women" the same way he allegedly treated Corfman and Nelson.

"guided her hand to his underwear." (Doc. 31-7 at 5). Nelson alleged that, when she was 16, Moore "began squeezing [her] neck attempting to force [her] head onto his crotch" and that Moore "tri[ed] to pull [her] shirt off." (Doc. 31-19 at 4). She also said: "I thought he was going to rape me. I was twisting and struggling and begging him to stop." (*Id.*). But none of Moore's other accusers alleged that Moore engaged in comparably aggressive touching. Instead, the others alleged that Moore pursued, dated, and kissed them (*see* docs. 31-7, 31-24), which the Court finds is materially distinguishable from the allegations of Corfman and Nelson.[22]

This alleged false and defamatory implication constitutes a material change to the allegations that the "other women" made. As a result, Moore plausibly alleged defamation and actual malice for this basis of his defamation-by-implication claim.

### 2. Lowe's statement that Wendy Miller "accused Moore of hitting on her while she was under the age of consent in Alabama"

Moore alleges that Lowe also defamed him in Lowe's second article when she wrote that Wendy Miller "accused Moore of hitting on her while she was under the age of consent in Alabama." (Doc. 51 at 25 ¶ 85).[23] Moore contends that, by referencing the age of consent, Lowe implied that Moore "solicited sexual acts from Miller while she was underage." (*Id.*). The Court dismisses this claim.

The phrase "hit on someone," in context, means "to show someone in a direct way that you are attracted to him or her." Hit on someone, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/hit-on-someone (last visited Mar. 11, 2022). As reported by the *Washington Post*, Miller alleged that Moore "approached her at the mall" when she was 14 and "told her she looked pretty." (Doc. 31-7 at 3, 7). Miller

---

[22] The closest is Gena Richardson's allegation about Moore's "'forceful' kiss that left her scared." (Doc. 31-24). But that allegation remains distinguishable. Further, Gena Richardson, on her own, is not a "handful," which is the term Lowe used.

[23] *See* Lowe, *supra* note 7.

also alleged that, two years later, Moore "began asking her out on dates in the presence of her mother at the photo booth." (*Id.* at 7).

As Moore successfully argued in *Cecil II*, saying that Moore "hit on" Wendy Miller is far different than saying Moore asked Miller to have sex. Miller's account supports the former statement ("hit on") but not the latter ("solicited sex")—which is why the Court refused to dismiss a claim based on the latter statement in *Cecil II*. Lowe's statement didn't cross the same line, so it wasn't "false <u>and</u> defamatory." *Dolgencorp*, 224 So. 3d at 186. Plus, it was truthful to report that Miller was under the age of consent (that is, under 16) the first time Moore spoke to her. ALA. CODE § 13A-6-70(c)(1). So the Court dismisses this basis.

### 3.   Lowe's references to Moore being a pedophile

Moore alleges that Lowe defamed him by labeling him a "pedophile." (Doc. 51 at 25–26 ¶ 86).[24] His theory is that Lowe defamatorily implied that Moore "has a 'preoccupation with a prepubescent child or children (generally 13 years of age or younger) that occurs over a period of at least six months.'" (*Id.*). The Court dismisses this basis.

In *Cecil II*, the Court held that the use of the term "pedophile" is "at least 'reasonably capable' of being read to suggest that Moore suffers from a disorder that makes him want to have sex with prepubescent girls," *i.e.*, 13 years old or younger. 2021 WL 1208870, at *6. Because nobody has accused Moore of having that condition, he has adequately alleged a "false <u>and</u> defamatory" statement. *Dolgencorp*, 224 So. 3d at 186.

The question is whether Moore adequately alleged actual malice. To do so, Moore must plausibly allege "'that the defendant either intended to communicate the defamatory meaning or knew of the defamatory meaning and was reckless in regard to it.'" *Cecil II*, 2021 WL 1208870, at *8. But Moore has not plausibly alleged facts that, if true, would establish that Lowe intended to convey (or understood the technical definition and recklessly conveyed) the clinical definition of the term "pedophile," rather

---

[24] *See* Lowe, *supra* note 6 ("pedophile"); Lowe, *supra* note 10 ("credibly accused sexually pedophilic predator").

than communicating that women accused Moore of sexual misconduct during their teens. So Moore has not plausibly alleged actual malice.

Moore alleges that Lowe's "callous disregard for the truth is the epitome of actual malice." (Doc. 51 at 25 ¶ 86). That Lowe is allegedly insensitive and cruel does not prove that she intended to convey (or understand that her statement might convey) the clinical definition of the term "pedophile." Moore also alleges that "[n]o person ever accused [him] of such behavior." (*Id.* at 25–26 ¶ 86). But that fact would not permit a jury to conclude that Lowe knew that it was incorrect to call Moore a pedophile, especially considering that the media *had* reported that Moore engaged in sexual misconduct with 14-year-old Corfman. (Doc. 31-7). And Moore alleges that Lowe "completely ignored" evidence suggesting that Moore is not a clinical pedophile. (Doc. 51 at 26 ¶ 86). But, again, Lowe had no duty to investigate absent a plausible allegation that she "purposefully avoided further investigation with the intent to avoid the truth." *See Michel*, 816 F.3d at 703. And Moore has not made a plausible purposeful-avoidance allegation. So, in sum, Moore did not plausibly allege actual malice, and the Court dismisses this claim.

### 4. Lowe's statement that "if you back Roy Moore in a primary, every pro-life bill that fails in the Senate means you have extra blood of babies on your hands"

Moore alleges that, in her first article, Lowe defamed him by warning voters, "if you back Roy Moore in a primary, every pro-life bill that fails in the Senate means you have extra blood of babies on your hands." (Doc. 51-1 at 26 ¶ 87).[25] Moore says that Lowe's warning "impl[ied] that voting for Moore would lead to the death of children." (*Id.*).

This statement is not actionable because it "cannot reasonably be interpreted as stating actual facts about [Moore]." *Horsley*, 292 F.3d at 701 (quoting *Milkovich*, 497 U.S. at 20). No reasonable reader would perceive Lowe's statement to say, imply, or suggest that Moore would actually kill children if elected. It's rhetoric that any reasonable reader would have understood to reflect Lowe's contempt for Moore. This case is

---

[25] *See* Lowe, *supra* note 6.

like *Horsley v. Feldt*, in which the Eleventh Circuit held that an accusation that the plaintiff had "the blood of these doctors on [his] hands" was non-actionable "lusty and imaginative expression[]" of contempt. 304 F.3d 1125, 1133 (11th Cir. 2002). So the Court dismisses this claim.

### 5. Lowe's statement that Moore was "famous for being banned from a mall because he sexually preyed on underage girls"

Moore alleges that, in her first article, Lowe defamed him by stating that Moore was "famous for being banned from a mall because he sexually preyed on underage girls." (Doc. 51 at 26 ¶ 88).[26] His theory is that the statement implies "official action taken for sexual solicitation of underage girls in a mall," which he says did not occur. (*Id.*). Moore adds that no evidence supports that the reason for the alleged ban was that he "sexually preyed on underage girls." (*Id.*). The Court dismisses this claim.

The claim fails because Moore has not plausibly alleged actual malice. Again, actual malice "cannot be found where . . . the publisher's allegations are supported by a multitude of previous reports upon which the publisher reasonably relied." *Rosanova*, 580 F.2d at 862. And Lowe's "reliance on . . . many independent sources, alone, should defeat any claim of actual malice." *Berisha*, 973 F.3d at 1313.

First, previous reporting corroborated the statement (or implication) that authorities banned Moore from the mall. (Docs. 31-14, 31-16, 31-21, 31-22, 31-25, 31-26, 31-27, 31-28, 31-29, 31-32). Second, reporting corroborated the statement that the reason for the ban was that Moore sexually preyed on underage girls. (*See id.*). And third, reporting even corroborated the implication that the reason for the ban was that Moore solicited sex from underage girls. (Docs. 31-14, 31-16, 43-17, 43-23, 43-27, 43-28). While those reports may be wrong, they were widespread.

On that front, the Court pauses to explain the apparent backstory of the mall-ban reporting. In November 2017, Glynn Wilson of the *New American Journal* (an Alabama-based website) wrote, "[s]ources tell me Moore was actually banned from the Gadsden Mall and the YMCA for his

---

[26] *See* Lowe, *supra* note 6.

inappropriate behavior of soliciting sex from young girls." (Doc. 31-14). The next day, the *New Yorker* published an article that repeated Wilson's statement. (Doc. 31-16). And then several more publications, such as the *Washington Post*, *The Telegraph*, and *People*, started circulating the statement that authorities banned Moore because he solicited sex from young girls. About two weeks later, Wilson published another article that said "further reporting indicates that 'ban' might be too strong a word."[27] But the genie had long since left the bottle.

Even if Wilson walked back parts of his initial report, Moore has not plausibly alleged actual malice. Lowe could rely on widespread reporting. *See Berisha*, 973 F.3d at 1313. And she had no duty to investigate Wilson's later online post absent a plausible allegation that she "purposefully avoided further investigation with the intent to avoid the truth." *Michel*, 816 F.3d at 703. Moore has not plausibly alleged that here.

For these reasons, Moore has not plausibly alleged actual malice for this basis. So the Court dismisses it.

### 6.   Lowe's and Dunleavy's statements that Nelson accused Moore of attempting to rape her

Moore alleges that Lowe and Dunleavy each defamed him by writing that Nelson accused Moore of attempting to rape her in a car. (Doc. 51 at 26–27 ¶¶ 89–90). In her second article, Lowe wrote that "Beverly Young Nelson, a Republican Trump supporter, accused Moore of attempting to rape her in a car when she was 16 years old." (Doc. 51-1 at

---

[27] Wilson wrote this in his follow-up article:

> While it has previously been reported that he was "banned" from the local mall and YMCA for inappropriate behavior and pursuing sexual relationships with underage girls, further reporting indicates that "ban" may be too strong a word. We now know that he was "run off" by store managers and mall security officers first from the Pizitz store in the mall, for spending hours fondling the female lingerie and hitting on store employees. He was "run off" from the mall itself on numerous occasions, also for being "creepy" and harassing teenaged girls and female employees.

Glynn Wilson, *Gadsden Alabama Unfairly Targeted by National Media in Roy Moore Sex Scandal*, NEW AM. J. (Nov. 27, 2017), https://www.newamericanjournal.net/2017/11/gadsden-alabama-unfairly-targeted-by-national-media-in-roy-moore-sex-scandal/.

9).[28] And in his first article, Dunleavy wrote that "Nelson, a Trump supporter, said that when she was 16 years old, Moore attempted to rape her in a car." (*Id.* at 17).[29] Moore's theory is that their statements imply "that Moore did something toward the commission of the crime of rape and that Nelson testified to his actions after the events in question." (Doc. 51 at 26–27 ¶¶ 89–90). Because neither implication is actionable, the Court dismisses this basis.

First, the possible implication "that Moore did something towards the commission of the crime of rape" is non-actionable because it is "substantial[ly] tru[e]." *Masson*, 501 U.S. at 516. The Court has already determined that it was technically inaccurate but substantially true to say that Nelson accused Moore of attempting to rape her in a car. *See supra* at 19–21. That's because the reporters' statements carry truthful "substance," "gist," and "sting" that justify the reporting. *Masson*, 501 U.S. at 516. And just as it was substantially true to report that Nelson accused Moore of attempting to rape her, the implication that Moore committed an act in furtherance of an attempted rape was also substantially (if not wholly) true. Again, Nelson alleged that Moore locked her inside a car, groped her, tried to force her head onto his crotch, and tried to take her shirt off. (Doc. 31-19 at 4). And Nelson said that "I thought he was going to rape me." (*Id.*) Moore therefore cannot show that Lowe's and Dunleavy's statements were "false <u>and</u> defamatory." *Dolgencorp*, 224 So. 3d at 186.

Second, regarding Moore's allegation that the statements imply "that Nelson testified to [Moore's] actions after the events in question," that implication is not actionable either. No reasonable reader would perceive the statements to imply that Nelson testified against Moore from a witness stand under oath. Instead, a reasonable reader would understand that the statements implied a public accusation. So Moore cannot show that this statement is "false <u>and</u> defamatory," either. *Id.*

Moore also made no effort to plead facts that would establish that Lowe and Dunleavy made these alleged implications with actual malice. (*See* doc. 51 at 26–27 ¶¶ 89–90). He does not even include a conclusory

---

[28] *See* Lowe, *supra* note 7.
[29] *See* Dunleavy, supra note 8.

actual-malice allegation. (*Id.*). So the Court also finds that Moore has not adequately alleged actual malice for this claim. *Coral Ridge Ministries Media, Inc.*, 6 F.4th at 1252.

For these reasons, the Court dismisses this basis.

### 7. Dunleavy's statement that "a number of women came forward during the [2017] campaign to claim that Moore had sexually assaulted them"

Moore alleges that, in his second article, Dunleavy defamed him by writing that "a number of women came forward during [Moore's 2017] campaign to claim that Moore had sexually assaulted them, including two accusers who were underage at the time of the alleged incidents." (Doc. 51 at 27 ¶ 91).[30] Moore says that this statement implies that "more than two women had accused [Moore] of sexual assault while under th[e] age of 16." (*Id.*). The Court dismisses this basis.

First, Moore's reading of Dunleavy's statement is unreasonable. No reasonable reader would understand the statement to imply that at least three women accused Moore of sexually assaulting them when they were 15 years old or younger. Read plainly, Dunleavy's article says at least three women accused Moore of sexual assault and that at least two were underage at the time of the incident.

Second, it was truthful to imply that three women accused Moore of sexual assault. Moore concedes that Corfman and Nelson accused him of sexual assault. (Doc. 51 at 27 ¶ 91). And Tina Johnson alleged that Moore "groped" or "grabbed" her buttocks when she was 28. (Docs. 31-22, 31-46).

Third, the Court finds that Moore has not plausibly alleged actual malice for his argument that "underage" implies "under the age of 16." No allegations in the complaint suggest that Dunleavy intended for readers to understand "underage" to mean younger than 16 (which would make the implication false because only Corfman was younger than 16) instead of younger than 18 (which would make the implication true). For these reasons, the Court dismisses this basis.

---

[30] *See* Dunleavy, *supra* note 9.

### 8.   Dunleavy's statement that Moore is an "accused sexual predator"

Moore alleges that, in his second article, Dunleavy defamed him by writing that Moore is an "accused sexual predator." (Doc. 51 at 27 ¶ 91).[31] The Court dismisses this basis.

For one, the statement is true. Multiple women accused Moore of misconduct, including Corfman, Nelson, Miller, Gibson, Deason, Thorp, and Johnson. (Docs. 31-7, 31-19, 31-22, 31-45, 31-46). Their accusations make it fair and truthful to label Moore an *accused* sexual predator. As reported in a *New York Times* article, an Alabama teacher accused Moore of being "a predator," which also makes it truthful to label Moore an accused predator. (Doc. 31-22 at 2). And other existing articles had referenced Moore's "predations" (docs. 31-12 at 5, 31-32 at 4, 31-33 at 4), or his "predatory" behavior (doc. 31-38 at 4). Those articles make it truthful to report that Moore was an accused predator, and also show that Dunleavy's statement is "supported by a multitude of previous reports upon which the publisher reasonably relied." *Rosanova*, 580 F.2d at 862.

For another, Moore made no effort establish actual malice. He does not even include a conclusory actual-malice allegation.

For these reasons, the Court dismisses this basis.

### 9.   Polumbo's statement that Moore was an "alleged sexual predator"

Moore alleges that Polumbo defamed him by similarly writing that Moore was an "alleged sexual predator." (Doc. 51 at 27 ¶ 92).[32] The Court dismisses this claim because several women alleged Moore committed sexual misconduct, including Corfman, Nelson, Miller, Gibson, Deason, Thorp, and Johnson. (Docs. 31-7, 31-19, 31-22, 31-45, 31-46). Their accusations make it fair and truthful to label Moore an *accused* sexual predator. As reported in a *New York Times* article, an Alabama teacher accused Moore of being "a predator," which also makes it truthful to label Moore an *accused* predator. (Doc. 31-22 at 2). And other existing articles

---

[31] *See* Dunleavy, *supra* note 9.

[32] *See* Polumbo, *supra* note 11.

had referenced Moore's "predations" (docs. 31-12 at 5, 31-32 at 4, 31-33 at 4), or his "predatory behavior (doc. 31-38 at 4). Those articles make it truthful to report that Moore is an accused predator, and also show that Dunleavy's statement is "supported by a multitude of previous reports upon which the publisher reasonably relied." *Rosanova*, 580 F.2d at 862. Moore also made no effort to plead facts that would establish actual malice. (Doc. 51 at 27 ¶ 92). So the Court dismisses this basis.

### 10.   Polumbo's statement Moore had been "credibly accused of sexual misconduct by multiple women who were just teenagers at the time"

Moore also alleges that Polumbo defamed him by writing that Moore had "been credibly accused of sexual misconduct by multiple women who were just teenagers at the time." (Doc. 51 at 27 ¶ 92).[33] His theory is that the statement implies that he "sexually assaulted and preyed on multiple teenage women." (*Id.*).

The word "multiple," in context, means "consisting of, including, or involving more than one." Multiple, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/multiple (last visited Mar. 11, 2022). So even if a reasonable reader might interpret "sexual misconduct" to mean sexual assault (*i.e.*, an unwanted or forcible sexual touching), Nelson's and Corfman's allegations make Dunleavy's statement truthful. (Docs. 31-7, 31-19). Otherwise, to the extent that a reader would could understand "sexual misconduct" to mean either sexual assault or other inappropriate sexual advances, allegations from Nelson, Corfman, Miller, Gibson, and Deason make the statement substantially truthful. (*Id.*). Plus, Moore did not try to plead facts that would establish actual malice. (Doc. 51 at 27 ¶ 92). So the Court dismisses this basis.

* * *

In sum, Moore may proceed only on his claim that Lowe defamed him by juxtaposing Nelson's and Corfman's allegations with the statement that "other women independently alleged having intimate relationships with Moore in their teens." (Doc. 51 at 24–25). The Court dismisses the claim with prejudice in all other respects. *See infra* at 36.

---

[33] *See* Polumbo, *supra* note 11.

## II.     The IIED/Outrage Claim (Count III)

Moore asserts an intentional-infliction-of-emotional-distress claim. (Doc. 51 at 29). His theory is that the defendants' defamatory publications proximately caused him to suffer "extreme emotional distress, mental anguish, embarrassment, and severe psychological distress utterly intolerable in a civilized society so as to deter him from again running for office and to dissuade others from supporting him." (*Id.* at 29 ¶ 102). The Court dismisses this claim with prejudice.

**The Law**: Under Alabama law, the tort of intentional infliction of emotional distress and the "tort of outrage" mean the same thing. *Ex parte Lumbermen's Underwriting Alliance*, 662 So. 2d 1133, 1134 (Ala. 1995). To state a claim under either, the plaintiff must prove that the defendant's conduct: "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Harrelson v. R.J.*, 882 So. 2d 317, 322 (Ala. 2003) (quoting *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1043 (Ala. 1993)). To state a claim, the alleged conduct must "go beyond all possible bounds of decency" and must "be regarded as atrocious and utterly intolerable in a civilized society." *Id.* at 332.

Moore must also prove actual malice. *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988). That means that Moore could only potentially proceed on the two claims the court has not dismissed: (1) defamation per se claim that Lowe defamed him by reporting that "[a] handful of other women independently alleged having intimate relationships with Moore in their teens," so that "intimate" could mean a sexual relationship (doc. 51 at 16–17); and (2) his defamation by implication claim based on Lowe's juxtaposition of Corfman's and Nelson's allegations with the statement that other women alleged "intimate relationships" with Moore, based on the implication that those other "intimate relationships" were like Corfman's and Nelson's allegations (doc. 51 at 24–25).

Alabama's tort of outrage or IIED is "extremely limited," and the Alabama Supreme Court has "recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious

sexual harassment." *Pott v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (internal citations omitted). Although the Alabama Supreme Court recognized that a viable claim *could* fall outside these three categories, *id.*, both that state court and the Eleventh Circuit have been extremely reluctant to extend the tort to other categories of conduct. *See, e.g.*, *Stancombe v. New Process Steel LP*, 652 F. App'x 729, 739 (11th Cir. 2016); *McIsaas v. WZEW-FM Corp.*, 495 So. 2d 649, 651 (Ala. 1986).

**The merits:** The Court dismisses this claim for two reasons. First, Moore has not adequately pleaded facts that "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Moore's complaint, in the IIED section, states that "[t]he publications referenced herein label Judge Moore an attempted rapist, accused sexual assailant, [and] pedophile among other egregious labels and typecasts." (Doc. 51 at 29 ¶ 103). But Moore does not mention in this section of his complaint Lowe's alleged statement and implication about the women with whom Moore allegedly had "intimate relationships," which is the only defamation basis on which he can proceed. His allegation that the defendants also published "other egregious labels and typecasts" is far too abstract and vague to give the defendants notice of the grounds on which Moore's claim rests. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). For that reason, Moore fails to plausibly allege outrage or IIED based on the only claims for which Moore may proceed.

Second, Moore does not allege conduct that "go[es] beyond all possible bounds of decency" or is "atrocious and utterly intolerable in a civilized society." *Harrelson*, 882 So. 2d at 332. The question here is whether Lowe's alleged false statement or implication that Moore had a sexual relationship with certain undisclosed women exceeds all possible bounds of decency. In *Potts*, the Alabama Supreme Court held that a hospital's false accusation that a nurse had a drug problem, which led to an investigation by the nursing board, was not outrageous enough to support a claim. 771 So. 2d at 463–65. Based on that standard, Lowe's statement(s) about Moore's "intimate relationships" with "other women" does not rise to the level of outrage necessary to support his state-law claim. And principles of federalism dictate this court not expand the current bounds of state law. So the Court dismisses this claim.

* * *

To sum up, Moore may proceed on his claims that Lowe defamed him per se (Count I) and defamed him by implication (Count II) when Lowe wrote that "[a] handful of other women independently alleged having intimate relationships with Moore in their teens." (Doc. 51 at 16–17, 24-25). The rest of his claims are due to be dismissed.

The Court allowed Moore to file a Second Amended Complaint so that Moore could "plead facts that would cure the deficiencies" in his First Amended Complaint. (Doc. 49). The Court explained during the hearing on the defendants' motion to dismiss the First Amended Complaint that Moore has "had enough chances" to produce an adequate complaint and that this would be his "last chance." (Doc. 54 at 35, 90). With that backdrop, the Court **DISMISSES WITH PREJUDICE** all of Moore's claims except for the two claims listed above.

**Done** and **Ordered** on March 11, 2022.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE