FILED

2022 Apr-05  PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

ROY MOORE,

  *Plaintiff*,

v.

TIANA LOWE, et al.,

  *Defendants*.

Civil Action

Case No. 4:20-cv-124-CLM

ORAL ARGUMENT REQUESTED

OPPOSED

## DEFENDANT'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND STAY DISCOVERY

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ...............................................................................................3

    I.      Multiple Women Accuse Moore of Sexual Misconduct......................3

    II.    Tiana Lowe Publishes an Opinion Piece Commenting on and Incorporating Two Prior News Stories .................................................4

    III.   Moore Sues and the Court Largely Dismisses His Case......................6

ARGUMENT ....................................................................................................7

    I.      The Court Should Grant Reconsideration:  the Second Amended Complaint Establishes Neither Falsity Nor Actual Malice .................7

    II.    In the Alternative, the Court Should Certify an Interlocutory Appeal.................................................................................................11

        A.    Whether Moore adequately pleaded actual malice is a controlling question of law ......................................................12

        B.    There are substantial grounds for difference of opinion as to whether Moore adequately pleaded actual malice...............13

        C.    An immediate appeal would advance the termination of this case ..................................................................................15

        D.    The Court should certify the following questions if it does not reconsider and dismiss this case ........................................15

# TABLE OF AUTHORITIES

**CASES**                                                                                        **Page(s)**

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. 2013) ............................................................ 8, 14

*Adler v. Conde Nast Publ'ns, Inc.*,
  643 F. Supp. 1558 (S.D.N.Y. 1986) ...................................................................13

*Agora, Inc. v. Axxess, Inc.*,
  90 F. Supp. 2d 697 (D. Md. 2000)........................................................................8

*Auto-Owners Ins. Co. v. United Way of E. Cent. Alabama*,
  2020 WL 9347967 (N.D. Ala. Nov. 17, 2020)....................................................12

*Berisha v. Lawson*,
  973 F.3d 1304 (11th Cir. 2020) ..........................................................................11

*Ceravolo v. Brown*,
  364 So. 2d 1155 (Ala. 1978) ..............................................................................11

*Drummond Co., Inc. v. Collingsworth*,
  2017 WL 4783549 (N.D. Ala. Sept. 14, 2017) ............................................. 13, 14

*Fletcher v. City of Madison*,
  2021 WL 5759752 (N.D. Ala. Dec. 3, 2021) ........................................................7

*Georgia State Conf. of the NAACP v. Fayette Cty. Bd. of Comm'rs*,
  952 F. Supp. 2d 1360 (N.D. Ga. 2013) ...............................................................13

*Herbert v. Lando*,
  781 F.2d 298 (2d Cir. 1986) ...............................................................................13

*Horsley v. Rivera*,
  292 F.3d 695 (11th Cir. 2002) ............................................................................13

*Jensen v. Times-Mirror*,
  647 F. Supp. 1525 (D. Conn. 1986) ....................................................................13

*Kahl v. Bureau of Nat'l Affs., Inc.*,
  856 F.3d 106 (D.C. Cir. 2017)...................................................................... 11, 13

*Klayman v. City Pages*,
  650 F. App'x 744 (11th Cir. 2016).............................................................. 8, 9, 15

*Liberty Nat. Life Ins. Co. v. Daugherty*,
   840 So. 2d 152 (Ala. 2002) .................................................................11

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) .................................................................... 7, 14

*McFarlin v. Conseco Servs., LLC*,
   381 F.3d 1251 (11th Cir. 2004) .................................................. 12, 15

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) .......................................... 9, 11, 12, 15

*Nicosia v. De Rooy*,
   72 F. Supp. 2d 1093 (N.D. Cal. 1999)..................................................8

*Otwell v. Home Point Fin. Corp.*,
   2021 WL 2587964 (N.D. Ala. Apr. 23, 2021) .....................................7

*Sanzone v. Hartford Life & Accident Ins. Co.*,
   519 F. Supp. 2d 1250 (S.D. Fla. 2007).................................................7

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012) ......................................................... 12, 14

*Summit Med. Ctr. of Alabama, Inc. v. Riley*,
   284 F. Supp. 2d 1350 (M.D. Ala. 2003).................................................7

*Turner v. Wells*,
   879 F.3d 1254 (11th Cir. 2018) ...........................................................12

**STATUTES**

28 U.S.C. § 1292(b) ......................................................................... *passim*

**OTHER AUTHORITIES**

16 Charles Alan Wright, et al.,
   Federal Practice & Procedure § 3929 (3d ed. 2017) .............................12

19 James W. Moore et al.,
   Moore's Federal Practice § 203.31 (3d ed. 2020) ................................12

**INTRODUCTION**

Of the 14 statements Plaintiff Roy S. Moore challenged in his scattershot Second Amended Complaint, the Court found only one to state a claim: the statement in defendant Tiana Lowe's *opinion* piece dated May 29, 2019, that "[a] handful of other women independently alleged having intimate relationships with Moore in their teens." Dkt. 59 at 36; *see also* DX-95.[1]

This relatively benign allegation was not central to the parties' arguments, which focused on the opinion piece's reference to reported allegations that Plaintiff was a pedophile and had attempted to rape one minor girl — references that the Court correctly decided were neither false nor published with actual malice. The allegation that Plaintiff was defamed by reference to the "other women" was an afterthought for Plaintiff, who devoted only one paragraph over two rounds of briefing defending it. *See* Dkt. 57 at 14. It was never explored at oral argument, and important aspects of the claim were not addressed in the Court's opinion. In particular, the Court did not consider the fact that the subject commentary specifically incorporated, by hyperlink, the very allegations made by the "other women." Reconsideration is warranted.

*The Court on reconsideration should find that Lowe's opinion piece was neither false nor published with actual malice.* Lowe's hyperlink to the original

---

[1] "DX-#" refers to the exhibits attached to Defendants' motions to dismiss (Dkts. 31 & 55).

reporting allowed readers to evaluate for themselves whether "other women independently alleged having intimate relationships with Moore in their teens." The statement accurately characterized what the women had alleged — dating relationships lasting months and involving physical intimacy (kissing and hugging).  Nothing in the opinion piece, or in the incorporated news stories, stated or implied that these other women had alleged sexual intercourse.  No reader could have been misled about that.  Nothing suggests that Lowe harbored serious doubts about the accuracy of her characterization of these dating relationships as intimate because "intimate" does fairly apply to the dating relationships described by the other women.  The mere fact that a word or phrase can convey a range of meanings in different contexts is insufficient, as a matter of law, to state a claim for actual malice, which requires facts giving rise to a plausible inference that the writer *subjectively* harbored serious doubts about what she wrote.  No such inference can be made here.

*In the alternative, the Court should certify the controlling legal issues raised in the Order (Dkt. 59) for interlocutory review under 28 U.S.C. § 1292(b).*  There are two controlling questions of law as to which there is at least a substantial ground for difference of opinion, and an immediate appeal will advance the termination of Moore's claims:

- **Defamation Per Se**:  Does a complaint plausibly allege actual malice where language is used that *could* convey a false and defamatory meaning, but the

2

writer hyperlinks to a report of the relevant conduct that does not support any such false or defamatory meaning?

- **Defamation-by-implication**:  Does the First Amendment recognize a "deceptive juxtaposition" theory of actual malice based on an implied comparison of different allegations, using the same or similar language, where the writer hyperlinks to the relevant source materials so the reader can judge for herself whether the allegations are similar?

## BACKGROUND

### I.    Multiple Women Accuse Moore of Sexual Misconduct

On November 9, 2017, *The Washington Post* reported the allegations of four women regarding their interactions with Roy Moore.  Second Amended Complaint, Dkt. 51 ¶ 16.  One woman, Leigh Corfman, described two encounters she had with Moore (age 32) when she was 14.  In the first encounter, Moore "drove her about 30 minutes to his home in the woods, told her how pretty she was and kissed her."  DX-6 at 1.  In the second, Corfman alleged that Moore "took off her shirt and pants and removed his clothes,"  "touched her over her bra and underpants," and "guided her hand to touch him over his underwear."  *Id.*

Wendy Miller stated that Moore had approached her at the mall when she was 14 and "told her she looked pretty" before "asking her out on dates" two years later.  *Id.* at 6.

Two other women — Debbie Gibson and Gloria Deason —told the *Post* that Moore had dated them for several months while they were in their late teens, but did not "say that Moore forced them into any sort of relationship or sexual

contact." *Id.* at 1-2.  According to the *Post*, Gibson alleged that when she was 17, she and Moore "dated for two to three months, and that he took her to his house, read her poetry and played his guitar.  She says he kissed her once in his bedroom and once by the pool at a local country club." *Id.* at 7.  Deason similarly recalled that when she was 18, she and Moore "dated off and on for several months and that he took her to his house at least two times."  She recounted that their "physical relationship" included "kissing and hugging." *Id.* at 6.

Within a week, a "[f]ifth woman," Beverly Nelson, accused Moore at a press conference of "tr[ying] to initiate sex with her in his car" when she was 16, including forcing her head down toward his crotch.  DX-19 at 1.  She stated, "I thought that he was going to rape me."  DX-18 at 3.

## II.  Tiana Lowe Publishes an Opinion Piece Commenting on and Incorporating Two Prior News Stories

A year and a half later, in a May 29, 2019 *Washington Examiner* opinion piece clearly denominated as such, "commentary" writer Tiana Lowe discussed Moore's anticipated second run for a U.S. Senate seat and the allegations that had "surfaced leading up to" the 2017 election, which Moore had lost.  DX-1 at 5.[2] Lowe first explained that:

---

[2] As Defendants explained in their motion to dismiss, see Dkt. 31 at 6 n.4, DX-1 reproduces (at 5-6) the challenged publication as it appeared online near the time of publication.  *See* Dkt. 31-2 (DX-1).  Moore attached a copy of that publication to his Second Amended Complaint, Dkt. 51, and refers to it throughout his allegations.

> Leigh Corfman alleges that when she was 14 in 1979, the then-32-year-old assistant district attorney had **two intimate encounters** with her which would, according to the Washington Post, apparently constitute second degree sexual abuse under Alabama law.

DX-1 at 5 (italics and bolding added).  The word "alleges" in blue is both text and a hyperlink to the November 9, 2017 *Washington Post* article (reproduced at DX-6) that reported the specific allegations of Corfman, as well as those of Miller, Gibson, and Deason.  *See* DX-1 at 5 (showing hyperlinks in color).  The reader thus was made aware that Lowe was characterizing two Corfman encounters, one that involved only kissing and one that involved petting, both as "intimate."  There was no suggestion that either "intimate" encounter involved sexual intercourse.

In the next paragraph, Lowe reviewed Nelson's allegations, noting Nelson had "accused Moore of attempting to rape her in a car when she was 16 years old."  Here again, with the word "accused" in blue, Lowe linked to an article (reproduced at DX-29) that gave readers access to Nelson's specific accusations.  *Id.*[3]

Lowe then commented on the allegations involving three additional women that had been reported in the *Post*:

> At least one more woman, Wendy Miller, accused Moore of hitting on her while she was under the age of consent in Alabama.  A handful of other women independently alleged having **intimate relationships** with Moore in their teens.

---

[3] The article reproduced at DX-29 embedded a video with Nelson, and the text that she "claims Moore sexually assaulted her" links to another article with further details:  Leada Gore, *Who Is Beverly Young Nelson? Alabama Woman Claims Moore Attacked Her When She Was 16*, AL.COM (Nov. 13, 2017), https://www.al.com/news/2017/11/who_is_beverly_young_nelson_al.html.

DX-1 at 5 (emphasis added).   As the Court held, Lowe's reference to Miller's account was accurate.  *See* Dkt. 59 at 25-26.  And both Gibson and Deason had claimed, according to the *Post*, relationships with Moore involving dating and physical intimacy over a period of months.  But neither they nor any of the other women discussed in either of the two source articles stated or implied that their interactions with Moore involved intercourse.

## III.   Moore Sues and the Court Largely Dismisses His Case

After two complaints and two rounds of briefing, the Court dismissed substantially all claims.  The Court allowed Moore to proceed only against Defendants Lowe and the Washington Newspaper Publishing Company, LLC on the claims that the "other women" statement was defamatory *per se* (because a reader *could* interpret "intimate relationships" to mean intercourse) and was defamatory by implication (because the juxtaposition of the "other women" with Corfman and Nelson *could* suggest "that Moore treated the 'other women' the same way he allegedly treated Corfman and Nelson").  *See* Dkt. 59 at 17, 24 & n.21.

The Court found Moore's "borderline conclusory"[4] allegation of actual malice plausible.  The Court held that Lowe may have understood the term

---

[4] Dkt. 59 at 18.  Moore alleged only:  "Lowe's statement . . . is also a lie and yet [she] published the lie all the same.  Thus, Lowe had knowledge that the statement was false or a reckless disregard of whether the statement was false **or** not."  *Id.* (quoting Dkt. 51 ¶ 68) (emphasis in original).

"intimate relationships" to mean conduct more extensive than what the "other women" had alleged, and could have been reckless in juxtaposing Corfman and Nelson with the other women, where Corfman and Nelson had recounted more serious misconduct. *Id.* at 18, 24-25. Relying on *Masson v. New Yorker Magazine*, *Inc.*, 501 U.S. 496, 516-17 (1991), the Court ruled that Lowe's "juxtaposition" of the allegations constituted "a material change" to the "other women['s]" allegations. Dkt. 59 at 24-25. The Court did not address the fact that the "other women['s]" allegations were fully incorporated and described in Lowe's commentary.

## ARGUMENT

**I.   The Court Should Grant Reconsideration:  the Second Amended Complaint Establishes Neither Falsity Nor Actual Malice**

Reconsideration is warranted where "a party presents the court with evidence of . . . the need to correct clear error or manifest injustice." *Otwell v. Home Point Fin. Corp.*, 2021 WL 2587964, at *2 (N.D. Ala. Apr. 23, 2021) (quoting *Summit Med. Ctr. of Alabama, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003)). This occurs when a court "has made an error not of reasoning, but of apprehension." *Fletcher v. City of Madison*, 2021 WL 5759752, at *1 (N.D. Ala. Dec. 3, 2021) (quoting *Sanzone v. Hartford Life & Accident Ins. Co*., 519 F. Supp. 2d 1250, 1255-56 (S.D. Fla. 2007)).

Defendants respectfully submit that the Court misapprehended the significance of the fact — established by the subject publication itself — that Lowe's opinion piece was a commentary on two specific news stories, which she fully incorporated by hyperlink.[5]  While the Court held, without reference to the hyperlinks, that falsity could be established by the mere possibility that a reader could find "intimate relationship" to mean intercourse, that abstract possibility cannot state a claim of falsity where the writer provides the allegations themselves for the reader to consider.

It is settled law that a publication includes both its text and materials hyperlinked or incorporated by reference.  *See Klayman v. City Pages*, 650 F. App'x 744, 751 (11th Cir. 2016).[6]  The Eleventh Circuit has instructed that "[w]here a publisher gives readers sufficient information to weigh for themselves the likelihood of an article's veracity, it reduces the risk that readers will reach

_____

[5] Defendants noted these links in both motions to dismiss.  *See* Dkt. 31 at 18, 21, 24-25 & nn.10, 14; Dkt. 55 at 15; *see also* DX-1 at 1 (describing hyperlinks).  Moore did not respond to that argument.  At the March 10, 2021 hearing, the Court acknowledged that "[Defendants'] argument that [they] included links in many, if not most, of the articles so that the reader could see what the allegations were makes this different [than *Cecil*]."  Hr'g Tr. 88:11-16.  But the Court did not address those links in its March 11, 2022 Order (Dkt. 59).

[6] *See also, e.g.*, *Adelson v. Harris*, 973 F. Supp. 2d 467, 485 (S.D.N.Y. 2013) (dismissing defamation complaint where defendant provided "the source" of the challenged statements "by hyperlinking to the AP Article"), *aff'd*, 876 F.3d 413 (2d Cir. 2017); *Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697, 704-05 (D. Md. 2000) (dismissing defamation complaint because "factual basis for the statement . . . is confirmable . . . by activating the hyperlink"), *aff'd*, 11 F. App'x 99 (4th Cir. 2001); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1103 (N.D. Cal. 1999) (dismissing defamation claim because defendant "provided a hyperlink" and thus "disclosed the underlying facts and allowed readers to decide for themselves").

unfair (or simply incorrect) conclusions." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016) (dismissing libel complaint).

Here, *none* of the women in the hyperlinked stories claimed intercourse, and each described in detail the nature of her interactions with Moore. Calling the multi-month dating relationships Moore had with "other women" Gibson and Deason "intimate" was truthful and accurate as a matter of settled dictionary meaning. *See* Cambridge Dictionary, https://bit.ly/3uXNIgh (intimacy: "the state of having a close, personal relationship or romantic relationship with someone"). When the hyperlinked articles are considered, it is simply not plausible to find that a reader could interpret Lowe's commentary on these allegations to mean that Moore had intercourse with the "other women." Indeed, the articles themselves make clear that only kissing and hugging were involved.

Even more apparent, however, is the lack of actual malice where a writer includes the source material in her commentary. As the Eleventh Circuit has held, an article that "contains information that readers can use to verify its content tends to undermine claims of actual malice." *Klayman*, 650 F. App'x at 751. "[I]f the defendants actually had been highly aware of the publications' falsity, it is unlikely they would have included source information that refuted any defamatory claims or implications." *Id.* Stating the obvious, Lowe could not have been subjectively aware that she was misleading readers about sexual intercourse or conduct more

9

extensive than kissing and hugging when she provided the readers with exactly what the women had claimed, which in each instance was not sexual intercourse (but was, in the cases of Gibson and Deason, a form of intimacy).

The Court reasoned that Lowe's description of Corfman's allegations as "intimate encounters," followed a few paragraphs later by allegations that other women had "intimate relationships," gave rise to a plausible inference that she recklessly conveyed that the latter allegations were of "sexual intercourse" or were "altercations" similar to what Corfman alleged. *See* Dkt. 59 at 18, 24-25. But neither of the two Corfman encounters involved sexual intercourse. The first involved only kissing. DX-6 at 1. Lowe's use of the word "intimate" to describe a range of sexual conduct, from hugging and kissing to heavy petting (but not intercourse) was appropriate and accurate. Where Lowe used the term intimate to characterize Corfman's encounter involving kissing, she could not have believed it false to use the same term to describe the very similar allegations of Deason and Gibson (at least as to the degree of physical intimacy). Lowe's distinction of "encounters" and "relationships" also was accurate. Neither Corfman nor Nelson had a relationship with Moore, as they described it. Gibson and Deason did.

Most important, Lowe provided her readers with the underlying allegations so they could evaluate them. That conclusively refutes any claim of deliberate

10

falsity or reckless disregard for obvious falsity as the Eleventh Circuit has held in *Michel* and *Klayman*.[7]

Moore's "borderline conclusory" allegations of actual malice crumble when the hyperlinks are considered. Because Lowe included the women's accounts as reported by other publications, there are no "facts giving rise to a reasonable inference" of actual malice. *Michel*, 816 F.3d at 707. Moore should not be allowed to maintain this groundless action "through expensive discovery proceedings," *id.* at 702, as "the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails." *Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106, 113 (D.C. Cir. 2017) (Kavanaugh, J.).[8]

## II.     In the Alternative, the Court Should Certify an Interlocutory Appeal

If the Court does not dismiss Moore's remaining claims, it should grant immediate appellate review, as it did in a similar case. *See Moore v. Cecil*, No.

---

[7] Under *Berisha v. Lawson*, 973 F.3d 1304, 1313 (11th Cir. 2020), Lowe also was "entitled to rely on 'previously published reports' from 'reputable sources' such as" *The Week*, which stated that Moore faced "allegations of initiating inappropriate ***intimate relationships*** with women while they were teenagers," DX-104 at 1 (emphasis added), and *AL.com*, which stated that "four women — all in their teens at the time — said they had ***sexual or romantic encounters*** with Moore," DX-105 at 1 (emphasis added). Those prior reports — which used substantially the same language challenged here — "defeat any claim of actual malice." *Berisha*, 973 F.3d at 1313.

[8] The Court also should reconsider its ruling that an allegation of consensual relationships with women in their late teens is defamatory *per se*. The incorporated *Post* news story made clear that both Gibson and Deason were over the age of 16 and consented to the dating relationships. That reporting would not "expose[] the plaintiff to public ridicule or contempt," even if many readers would look askance. *Liberty Nat. Life Ins. Co. v. Daugherty*, 840 So. 2d 152, 157 (Ala. 2002) (quoting *Ceravolo v. Brown*, 364 So. 2d 1155, 1157 (Ala. 1978)).

4:19-cv-01855-CLM (N.D. Ala. Mar. 31, 2021), Dkt. 62 at 2.  There are clearly presented legal issues here that are particularly amenable to interlocutory appeal.

"A 28 U.S.C. § 1292(b) certification requires the district judge to certify (1) that the order involves a controlling question of law, (2) as to which there is substantial ground for a difference of opinion, and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Auto-Owners Ins. Co. v. United Way of E. Cent. Alabama*, 2020 WL 9347967, at *1 (N.D. Ala. Nov. 17, 2020) (citing 19 James W. Moore et al., Moore's Federal Practice § 203.31 (3d ed. 2020)); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004).  Section 1292(b) "is not limited by its language to 'exceptional' cases" — rather, "[f]lexibility is justified."  16 Charles Alan Wright, et al., Federal Practice & Procedure § 3929 (3d ed. 2017).

### A.   Whether Moore adequately pleaded actual malice is a controlling question of law

Because of the constitutional protection accorded to persons who address matters of public debate involving public figures like U.S. Senate candidate Moore, the Eleventh Circuit and other circuits have held that the adequacy of allegations of actual malice is a controlling question of law.  *See*, *e.g.*, *Michel*, 816 F.3d at 702 (dismissal appropriate as matter of law where facts do not establish malice); *Turner v. Wells*, 879 F.3d 1254, 1273 (11th Cir. 2018) (same); *accord Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012).

12

As this Court correctly recognized in *Cecil* in granting leave for interlocutory review of its decision on actual malice, district courts regularly grant and courts of appeals regularly accept motions for certification of such controlling legal questions. *See*, *e.g.*, *Horsley v. Rivera*, 292 F.3d 695, 697 (11th Cir. 2002) (granting interlocutory appeal and reversing decision to sustain defamation suit).[9]

## B. There are substantial grounds for difference of opinion as to whether Moore adequately pleaded actual malice

In the Eleventh Circuit, "[s]ubstantial ground for difference of opinion exists when a legal issue is (1) difficult and of first impression, (2) the district courts of the controlling circuit are split as to the issue, or (3) the circuits are split on the issue." *Drummond Co., Inc. v. Collingsworth*, 2017 WL 4783549, at *3 (N.D. Ala. Sept. 14, 2017) (citing *Georgia State Conf. of the NAACP v. Fayette Cty. Bd. of Comm'rs*, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013)).  Here, there are ample grounds for difference of opinion as to the Court's determination that actual malice has been alleged adequately as to the *per se* and by-implication claims.

**Defamation per se:**  The Court held that Lowe's possible awareness that "intimate relationship" could mean intercourse — an allegation not even pleaded

---

[9] *See also Kahl*, 856 F.3d at 113 (addressing adequacy of actual malice on § 1292(b) appeal); *Herbert v. Lando*, 781 F.2d 298, 304 (2d Cir. 1986*)* (accepting interlocutory appeal and reviewing evidence of substantial truth and actual malice); *Adler v. Conde Nast Publ'ns, Inc.*, 643 F. Supp. 1558, 1567 (S.D.N.Y. 1986) (granting certification on proper application of actual malice standard); *Jensen v. Times-Mirror*, 647 F. Supp. 1525, 1528-29 (D. Conn. 1986) (certifying order for interlocutory appeal so Second Circuit can address "first amendment questions").

— was sufficient to satisfy the actual malice standard. Dkt. 59 at 18. No case so holds, which means that even on its own terms the ruling presents a difficult issue of first impression. But more important, the ruling is at odds with *Klayman* and *Michel*[10] and the decisions of other circuits, which hold that inclusion of the relevant source material refutes a claim of actual malice. *See Schatz*, 669 F.3d at 53, 58 (former candidate for U.S. Senate failed to plead actual malice where the allegedly defamatory flyer "synced up with" the "two newspaper articles" that the flyer had cited for support); *Adelson*, 973 F. Supp. 2d at 502-03 (citing *Schatz* and finding no actual malice where defendants cited and relied on prior reports).

**Defamation by implication:** The Court relied here exclusively on *Masson*, which held that "a deliberate alteration of the words uttered by a plaintiff does not equate with knowledge of falsity for purposes of *New York Times Co. v. Sullivan* . . . , unless the alteration results in a material change in the meaning conveyed by the statement." 501 U.S. at 517 (citations omitted). Lowe did not alter any quotations, and she linked to the underlying reports of the allegations she was characterizing. The Court nonetheless concluded that "juxtaposing" the Corfman and Nelson allegations materially changed what the "other women" had alleged. Dkt. 59 at 23-25.

---

[10] If the Court disagrees that *Klayman* and *Michel* control, then this case presents a legal issue of first impression, further justifying immediate appeal. *Drummond Co.*, 2017 WL 4783549, at *3.

No authority supports the Court's ruling that "juxtaposition" of claims without any alteration of words can establish actual malice — particularly where the claims themselves are linked to the underlying publications that provide full detail as to what had been alleged by each woman.[11]  It is therefore a difficult question of first impression that should receive interlocutory appellate review.

### C.    An immediate appeal would advance the termination of this case

A reversal of the Court's actual malice rulings "would serve to avoid a trial or otherwise substantially shorten the litigation."  *McFarlin*, 381 F.3d at 1259. Indeed, it would end this case at the outset.

### D.    The Court should certify the following questions if it does not reconsider and dismiss this case[12]

- **Defamation Per Se:**  Does a complaint plausibly allege actual malice where language is used that *could* convey a false and defamatory meaning, but the writer hyperlinks to a report of the relevant conduct that does not support any such false or defamatory meaning?

- **Defamation-by-implication:**  Does the First Amendment recognize a "deceptive juxtaposition" theory of actual malice based on an implied comparison of different allegations, using the same or similar language, where the writer hyperlinks to the relevant source materials so the reader can judge for herself whether the allegations are similar?

---

[11] In *Klayman*, the court acknowledged that defamation-by-implication can be shown through "a juxtaposition of a series of facts so as to imply a defamatory connection between them."  650 F. App'x at 749.  But the court *did not* hold that such juxtaposition alone sufficed to show actual malice, and held instead that facts establishing deliberate falsity or recklessness must be pleaded.

[12] The Court should also stay discovery pending appeal to prevent Defendants from entering futile and "expensive discovery proceedings," which constrict their First Amendment rights "in exactly the manner the actual malice standard was intended to prevent."  *Michel*, 816 F.3d at 702.

Respectfully submitted,

 /s/ Mark C. Hansen                                    /s/ Samuel H. Franklin                
Mark C. Hansen (*pro hac vice*)           Samuel H. Franklin
Joshua D. Branson (*pro hac vice*)       John G. Thompson, Jr.
Daniel G. Bird (*pro hac vice*)             Jonathan R. Little
Daniel S. Severson (*pro hac vice*)      LIGHTFOOT FRANKLIN &
KELLOGG, HANSEN, TODD,                     WHITE LLC
   FIGEL & FREDERICK, P.L.L.C.            The Clark Building
1615 M Street, N.W., Suite 400             400 20th Street North
Washington, D.C. 20036                        Birmingham, AL 35203
Main: (202) 326-7900                            T: (205) 581-0700
Fax: (202) 326-7999                              F: (205) 581-0799
mhansen@kellogghansen.com            E: sfranklin@lightfootlaw.com
                                                            E: jthompson@lightfootlaw.com
                                                            E: jlittle@lightfootlaw.com

*Counsel for Defendants Tiana Lowe and*
*The Washington Newspaper Publishing Company, LLC*

April 5, 2022

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that on April 5, 2022, the foregoing was electronically filed using the Court's CM/ECF system, which caused a copy of the document to be served on all registered participants identified on the Notice of Electronic Filing.


                                              */s/ Mark C. Hansen*
                                              OF COUNSEL